**In re BRANIFF AIRWAYS, INC., Debtor.**

**Bankruptcy No. 482–00369.**

United States Bankruptcy Court, N.D. Texas, Fort Worth Division.

Aug. 7, 1984.

Daniel M. Lewis, Richard P. Schifter, Brian P. Leitch, Arnold & Porter, Washington, D.C., for debtor/movant.

Edward L. Rothberg, Atty., Tax Division, Dept. of Justice, Dallas, Tex., for the United States (Internal Revenue Service).

J. Christopher Kohn, Tracy Whitaker, Stephanie Wickouski, Attys., Civil Division Dept. of Justice, Washington, D.C., for the United States (all other respondent agencies).

ORDER DENYING DALFORT'S MOTION TO ALLOW SETOFF OF CERTAIN CLAIMS OF DALFORT AGAINST THE UNITED STATES AGAINST CERTAIN DEBTS OF DALFORT TO THE UNITED STATES

MICHAEL A. McCONNELL, Bankruptcy Judge.

## BACKGROUND

1. On February 27, 1984, Dalfort Corporation ("Dalfort" or "Braniff") (formerly Braniff Airways Incorporated) filed a Motion to Allow Setoff of Certain Claims of Dalfort Against the United States Against Certain Debts of Dalfort to the United States ("Setoff Motion").

2. On February 15, 1984, the United States moved for a Summary Judgment in an interpleader action captioned *Aetna Casualty & Surety Co. v. Braniff Airways, Inc.*, Adversary Proceeding No. 483–0467. The subject of the interpleader action is a $200,000 certificate of deposit which collateralizes an air carrier blanket bond, issued by Aetna Casualty as surety, given by Braniff to the United States Customs Service with regard to certain potential duties and penalties. The interpleader action also involves the setoff issues raised by Dalfort and the United States in the Setoff Motion, and is therefore discussed in this Order.

3. In its Setoff Motion, Dalfort seeks to setoff certain receivables due Dalfort from the United States against certain claims of the United States against Dalfort. The United States, in opposition to the Setoff Motion, urges the Court: (1) to require Dalfort to use its claim to partially offset general unsecured claims of the United States, and (2) to require Dalfort to pay the priority tax claims of the United States in full.

4. The parties have stipulated the material facts, and have submitted written briefs on the legal issues. On May 7, 1984, the Court heard oral argument. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure as incorporated by Bankruptcy Rule 7052, the Court hereby enters the following findings of fact, conclusions of law and order denying the Setoff Motion.

## THE STIPULATED FACTS

5. The various debts between the parties are set forth in the Stipulation attached hereto as Exhibit A. These amounts have been stipulated for purposes of the Setoff Motion only, and each party has reserved its rights to contest the precise amount owing after a ruling on the Setoff Motion.

6. In general, the United States has prepetition non-priority claims against Braniff in the approximate amount of $8.9 million, principally for claims of various government agencies for unused air travel tickets and pension excise tax claims of the IRS.

7. The United States also has a claim against Braniff for employment taxes due with respect to the payment of 11 U.S.C. § 507(a)(3) priority wage claims in the approximate amount of $4.2 million. $2.9 million of this amount represents income and FICA taxes actually withheld from the payment of the priority wage claims to the employees. The remaining $1.3 million constitutes the employer's share of taxes due on the priority wage claims.

8. The United States also has a pre-petition priority claim against Braniff for federal unemployment tax with respect to wages paid before its petition in the amount of $11,125.00.

9. The United States also has a pre-petition non-priority claim against Braniff for $52,359.00 in Customs duties and penalties.

10. The United States also has a pre-petition non-priority claim against Braniff for $155,647 in customs duties and penalties for which Aetna Casualty & Surety Co.

("Aetna") is liable as a surety. The bond issued by Aetna is fully collateralized by a certificate of deposit received from Braniff.

11. Braniff, on the other hand, has pre-petition claims against the United States of approximately $4.5 million, principally for government transportation requests ("GTR's") which were used by government officials but never paid for.

## THE POSITIONS OF THE PARTIES

12. Dalfort requests that the approximately $4.5 million dollars it holds in claims against the United States be setoff in the following manner:

13. *First,* to extinguish the approximately $155,647.00 in debts and penalties that it owes the Customs Service, for which Aetna is obligated as surety; *second,* to extinguish the $11,125.00 that Dalfort owes the IRS for unpaid, pre-petition unemployment taxes; *third,* to extinguish the approximately $1.2 million dollars that it owes the IRS for the employer's share of FICA as a result of the payment of priority wage claims; *fourth,* to extinguish the approximately $100,000.00 in unemployment taxes which it owes the IRS as the result of the payment of priority wage claims for work performed prior to the filing of the Chapter 11 petition; *fifth,* to extinguish the approximately $2.9 million dollars that it owes the IRS for the employee's share of FICA, and for income taxes withheld on wages as a result of the payment of priority wage claims; *sixth,* to extinguish any such other priority claims to the United States as may exist; and *seventh,* to extinguish unsecured claims of the United States.

14. In opposition, the government argues that its claims for taxes arising out of the payment of priority wage claims to former employees pursuant to 11 U.S.C. § 507(a)(3) (specifically the FICA tax on employers, the unemployment tax, and the withholding taxes, all of which total ap-

proximately $4.2 million, hereinafter referred to as "the Payroll Taxes") arose post-petition, and, pursuant to Section 553, cannot be setoff against the pre-petition obligations of the government to Dalfort until full setoff of any pre-petition claims against Dalfort has been accomplished or adequate protection has been furnished.[1]

## CONFLICTING RIGHTS OF SETOFF

■ 15. Although Section 553 of the Bankruptcy Code speaks in terms of the *creditor's* right of setoff, the *debtor* has the right to assert setoff as well. *Compare* 11 U.S.C. § 553 *with* 11 U.S.C. §§ 106(b), 541(e); *Carstens v. McLean,* 7 F.2d 322 (9th Cir.1925); *In re Standard Furniture Co.,* 3 B.R. 527, 531 (Bankr.S.D. Cal.1980). In the instant case, the Court faces the question of how to apply setoff when the methods proposed by the debtor and creditor are in conflict, and the Bankruptcy Code does not provide a clear answer to this question.

16. The creditor's right of setoff in bankruptcy is explicitly set forth in Section 553(a) of the Bankruptcy Code which provides in pertinent part:

> "Except as otherwise provided in this section and in Sections 362 and 363 of this title, this title does not affect any right of *a creditor* to offset *a mutual debt* owing by such creditor to the debtor that *arose before the commencement of the case ...*" (emphasis ours)

■ The debts and claims are not required to be of the same character before the principle of setoff may be applied. The only requirements for setoff under Section 553 are: (1) the debts and claims must be mutual, and (2) they must be pre-petition.

17. Although Section 553 does not mention a *debtor's* right of setoff by its terms, the Bankruptcy Code implicitly recognizes the use of offset by a debtor as a "defense" which the debtor may assert under

---

1. The Court notes the United States represents in its pleadings that it has not filed a motion for relief from the automatic stay in order to exercise any setoff rights it may be entitled to pursu-

ant to 11 U.S.C. § 553 due to the uncertainty over the precise amount of the competing claims.

448

Section 541(e) of the Code. 11 U.S.C. § 541(e); *In re Standard Furniture Co.,* 3 B.R. 527, 531 (Bankr.S.D.Cal.1980). Section 541(e) provides in part: "That the estate shall have the benefit of any defense available to the debtor as against an entity other than the estate ..."

## EQUITABLE CONSIDERATIONS

■ 18. Equality of distribution among creditors is a fundamental policy of bankruptcy law. *See, e.g., Sampsell v. Imperial Paper & Color Corp.,* 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293 (1941); *Yellowhouse Machinery Co. v. Mack (In re Hughes),* 704 F.2d 820, 822 (5th Cir.1983); H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6138; *4 Collier on Bankruptcy* ¶ 547.03 (15th Ed.1983). The privilege of setoff is at odds with this fundamental policy because setoff permits a creditor to obtain full satisfaction of a claim by extinguishing an equal amount of the creditor's obligation to the debtor, *i.e.,* in effect, the creditor receives a "preference". Denying setoff, on the other hand, would result in the creditor paying into the estate the full amount owed while receiving only a pro rata distribution ultimately made to all unsecured creditors. Notwithstanding this conflict with the policy of equality of distribution among creditors, however, setoff has long been permitted in bankruptcy. *New York County National Bank v. Massey,* 192 U.S. 138, 146, 24 S.Ct. 199, 201, 48 L.Ed. 380 (1904).

19. The basic doctrine of setoff arose in a nonbankruptcy context as a practical tool to eliminate unnecessary transactions between parties holding mutual debts. Thus, the Supreme Court has stated that setoff "is grounded on the absurdity of making A pay B when B owes A." *Studley v. Boylston National Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913).

20. According to the Third Circuit, "The historical antecedents of setoff rights are long and venerable and are based on the common sense notion that 'a man should not be compelled to pay one moment what

he will be entitled to recover back the next'". *United States v. Norton,* 717 F.2d 767, 773 (3d Cir.1983).

■ 21. Setoff in bankruptcy is rooted in equity. "In the absence of a recognition of the right to a setoff, the creditor might be forced to pay *in full* the amount owed to the debtor, but be limited to no more than a pro rata recovery of his claim against the debtor. The process of imposing this loss on an otherwise innocent party has historically been thought to be improper". *2 Norton Bankr.L. & Prac.* § 33.01.

■ 22. Because of its origins as an equitable remedy, the Court recognizes that the "allowance of a setoff lies within the sound discretion of the trial court". *Riggs v. Government Emp. Financial Corp.,* 623 F.2d 68, 73 (9th Cir.1980); *Traders Bank of Kansas City v. Stonitsch (Matter of Isis Foods, Inc.),* 24 B.R. 75, 77 (Bankr.W.D.Mo.1982); *Matter of Perry, Adams and Lewis Securities,* 30 B.R. 845, 852 (Bankr.W.D.Mo.1983).

■ 23. The discretion of this Court to permit setoff on equitable grounds, however, is not unlimited. First, a court of equity should not permit setoff where the requirement of mutuality of parties and claims is missing. Secondly, although a court of equity could permit setoff even though mutuality is wanting, it should decline to do so absent a showing of irremedial injustice. Finally, there is a specific statutory constraint contained in Section 553 of the Bankruptcy Code regarding "adequate protection" for the creditor.

■ 24. Under Section 506(a) of the Bankruptcy Code, the claim of a creditor that is subject to setoff under Section 553 is a secured claim to the extent of the amount subject to setoff. Like any secured claim, therefore, an entity with a right to setoff is assured that the automatic stay will be lifted to permit the creditor to setoff unless "adequate protection" is furnished. *In re R.C.I. Enterprises, Inc.,* 22 B.R. 549, 551 (Bankr.S.D.Florida 1982); *In re Princess Baking Corp.,* 5 B.R. 587, 590 (Bankr.S.D.Cal.1980).

## THE REQUIREMENT OF MUTUALITY

25. The doctrine of setoff, whether legal or equitable, is essentially a doctrine of equity, based on the principle that natural justice and equity require that the demands of parties mutually indebted be setoff against each other and only the balance recovered. As a general rule in equity, as at law, it is essential to the establishment of a setoff that the claims or debts be mutual, that is, they must subsist or be owing between the same parties, in the same right or capacity, and must be of the same kind or quality. Equity, following the law, will not ordinarily allow a setoff of debts accruing in different rights or in dissimilar capacities. 20 AM.JUR.2d Counterclaim, Recoupment, and Setoff §§ 7, 75.

26. The requirement of mutuality of parties is of particular significance in the context of bankruptcy. Because the debtor and the debtor-in-possession are separate and distinct entities, the courts have concluded that the requisite element of mutuality of parties is lacking whenever a creditor attempts to offset pre-petition debt against a post-petition claim. Although the courts have focused upon this requirement primarily in the context of attempted creditor offsets, there is no justification for applying a different requirement when a debtor seeks to offset.

27. This distinction between the debtor and the debtor-in-possession and its bearing on the requirement of mutuality was recognized by Judge Brister in *Hill v. Farmers Home Administration (In re Hill)*, 19 B.R. 375, 380 (Bankr.N.D.Tex.1982), where he commented:

> However, the pre-petition debtor and the debtor-in-possession are separate and distinct entities. A post-petition obligation may not be setoff against a pre-petition obligation of the debtor, because there is no mutuality of obligation. *Standard Oil Company of New Jersey v. Elliott*, 4th Cir.1935, 80 F.2d 158. *See In re Shoppers Paradise, Inc.*, 8 B.R. 271, 277–78 (Bkrtcy.S.D.N.Y., 1980); *Framingham Winery, Inc. v. J.A.G. Inc.*, 7 B.R. 624, 626–27 (Bkrtcy.D.Mass., 1980; *Nelson v. First National Bank and Trust Company of El Dorado*, 6 B.R. 248, 249–50 (Bkrtcy.D.Kan., 1980); *Big Bear Supermarket No. 3 v. Princess Baking Corporation*, 5 B.R. 587, 590–91 (Bkrtcy.S.D.Cal., 1980); *In re Howell*, 4 B.R. 102, 108 (Bkrtcy.M.D.Tenn., 1980).

28. Based upon the foregoing authorities, it appears, that, as a general rule, neither a creditor nor a debtor may offset pre-petition debts and claims against post-petition debts and claims because of the absence of mutuality of the parties. A *debtor's* pre-petition claim against a creditor does not involve the same parties as the *debtor-in-possession's* claim against the same creditor. Absent irremedial injustice, a court should not exercise its discretionary equitable powers to allow offset where the requirement of mutuality of obligations and parties is lacking.

29. Setoff by a creditor of its pre-petition claims against the debtor against its post-petition obligation to the debtor is prohibited because such setoff would otherwise accomplish a post-petition payment of a pre-petition claim in violation of Section 549 of the Code. Dalfort contends, however, that setoff by the debtor of a pre-petition receivable due it against a post-petition claim against the debtor does not have this effect, and, thus, there is no reason to prohibit such setoff, citing *e.g., In re Great Plains Royalty Corp.*, 471 F.2d 1261 (8th Cir.1973); *In re North Atlantic & Gulf Steamship Co.*, 204 F.Supp. 899 (S.D.N.Y. 1962), *aff'd sub nom., Schilling v. A/S D/S Dannebrog*, 320 F.2d 628 (2d Cir. 1963).

30. A review of these cases, however, reveals that the courts did not focus upon the requirement of mutuality of the parties in bankruptcy, *i.e.*, debtor v. debtor-in-possession; and therefore this Court finds the cases cited to be unpersuasive.

31. Furthermore, Dalfort contends that Section 106(b) of the Bankruptcy Code, regarding setoff of claims of governmental units, does not contain a pre-petition mutuality requirement, and therefore Dalfort

should be able to setoff pre-petition versus post-petition debts on the basis of Section 106(b).

■ 32. Section 106(b) provides *inter alia* that "There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate." The sole purpose of Section 106(b), however, is to create a partial waiver of the sovereign immunity of a governmental unit. The waiver is limited to the amount of the governmental unit's claim and is triggered only when the governmental unit files a claim. It does not permit an affirmative recovery against the government. *In re O.P.M. Leasing Services, Inc.*, 21 B.R. 993 (Bankr.S.D.N.Y.1982); H.Rep. No. 595, 95th Cong., 1st Sess. 317 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 29–30 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5815–16.

■ 33. In view of the purpose of Section 106, *i.e.*, waiver of sovereign immunity, this Court declines to view it as a mandate that the debtor's setoff right is not governed by any principles of established setoff law but is *carte blanche* authority for the debtor to do as it pleases. Such a construction is not required by the wording of Section 106(b), the legislative history or the case law. Section 106 provides the debtor with the right of setoff against a governmental unit by waiving sovereign immunity. It does not waive anything else or establish any superior pecking order.

### THE PAYROLL TAXES OWING TO THE UNITED STATES ARE POST–PETITION CLAIMS

■ 34. In view of this Court's holding that pre-petition claims of the debtor

cannot be setoff against the debts of the debtor-in-possession because of a lack of mutuality of the parties, the characterization of the Payroll Taxes owing to the United States as pre- or post-petition claims is brought into focus. The IRS argues that the Payroll Taxes arose post-petition. If the Court determines the Payroll Taxes to be post-petition, Dalfort cannot setoff against the Payroll Taxes. Dalfort, in response, argues that the Payroll Taxes are Section 507(a)(6)(C) or (D) tax claims[2] which pursuant to Section 502(i) are to be treated as if they arose pre-petition.[3] In the alternative, Dalfort argues that even if the Payroll Taxes are not Section 507(a)(6)(C) or (D) claims they still should be considered as pre-petition claims for mutuality purposes as the work was performed pre-petition.

35. The Payroll Taxes in dispute are comprised of employment taxes due the IRS as a result of Dalfort's payment of Section 507(a)(3) priority wage claims for work done by employees prior to the filing of the petition for reorganization. These include four groups:

(1) the employer's FICA share ($1.2 million)

(2) the employees' FICA share ($1.2 million)

(3) income tax withheld from the employees' wages ($1.7 million)

(4) federal unemployment tax ($100,000)

A fifth group of taxes in the amount of $11,125.00 is for unrelated, unpaid unemployment taxes.

36. The question of whether the employees' share of FICA and income tax

---

**2.** Section 507(a)(6)(C) provides a sixth priority for a "tax required to be collected or withheld and for which the debtor is liable in whatever capacity." Section 507(a)(6)(D) provides a sixth priority for

an employment tax on a wage, salary or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or

under any extension, after three years before the date of the filing of the petition.

**3.** Section 502(i) provides:

A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(6) of this title shall be determined and shall be allowed under subsection (a), (b) or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

withholding constitutes pre- or post-petition claims was recently answered by the United States Supreme Court in *Otte v. United States*, 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974) when it said, "Liability for the taxes accrues only when the wage is paid.... The wages that are the subject of the wage claims, although earned before bankruptcy, were not paid prior to bankruptcy." 419 U.S. at 55, 95 S.Ct. at 255. The Supreme Court reinforced this statement later in the decision when it said, "the taxes did not become due and owing at all until the claims, constituting wages, were paid. This took place after the bankruptcy, not before. The situation thus differs from that where the bankrupt paid wages prior to bankruptcy, but the taxes withheld were not remitted to the taxing entities by the time of the inception of the bankruptcy proceeding." 419 U.S. at 56, 95 S.Ct. at 256.

37. The *Otte* decision is entirely consistent with the generally accepted principle that a pre-petition claim which is unmatured, unliquidated or even contingent on the date of the filing of the petition is still considered a pre-petition claim. If the debt is absolutely owed, but not presently due, or definitely liable but unliquidated it is still a pre-petition debt. This is not the case with the employees' share of FICA and income taxes. With regard to these there are no taxes due until the wages are paid, if ever.

38. This Court concludes, for the same basic principles enunciated in *Otte*, that the employer's share of FICA are also post-petition claims of the IRS. Dalfort's arguments to the contrary are rejected. The Payroll Taxes arose as a result of payment of Section 507(a)(3) wage claims, and as such are likewise 507(a)(3) claims. Under the *Otte* rationale, the tax claims are entitled to the same 507(a)(3) priority as the wage claims themselves. As Justice Blackmun observed:

> Withholding taxes, however, do not strike us as costs or expenses of doing business. They are attributable in their entirety to the availability of funds for the payment of priority wage claims. They accrue only as those claims are paid and, to the extent of that payment, the payment of the taxes should be assured. In addition, it is anomalous to accord withholding taxes a higher priority than the wage claims to which they so directly relate. They can be computed only upon the amount of funds available for payment of the wage claims and should not have a computational base greater than those payments. *The withholding taxes are, in full effect, part of the claims themselves and derive from and are carved out* of the payment of those claims. We therefore fully agree with the Second Circuit's observation, 480 F.2d [184] at 190: "Conceptually the tax payments should be treated in the same way as the wages from which they derive and of which they are a part."

> . . . . .

> We therefore conclude that these federal and city withholding taxes are entitled, as are the priority wage claims from which they emerge, to second priority of payment under § 64a of the Act, 11 U.S.C. § 104(a) [11 U.S.C. § 104(a)]. (emphasis ours)

39. Furthermore, as the Payroll Taxes are Section 507(a)(3) claims, Section 502(i) is inapplicable since it only applies to Section 507(a)(6) priority claims.[4]

40. Having found that the Payroll Taxes in question are post-petition debts of the Debtor-in-Possession (Dalfort) and having held that, in general, pre-petition claims of the debtor cannot be setoff against post-petition debts of the debtor-in-possession,

---

4. It is important to remember why Section 502(i) was placed in the Bankruptcy Code. All Section 502(i) really does is make plain that those tax claims described in 507(a)(6) are not entitled to an "administrative expense" priority under Section 503(b) simply by virtue of the fact that the claim arose post-petition. Section 502(i) does not change the fact that the tax claims are *priority* claims under Section 507; it simply insures that they are not elevated to a *higher* priority under Section 503. 3 *Collier on Bankruptcy* ¶ 502.09 n. 1.

the Court must deny Dalfort's requested setoff as it relates to the Payroll Taxes.

## THE SETOFF MOTION IS NOT SUPPORTABLE ON EQUITABLE GROUNDS

41. Even if the Payroll Taxes were 507(a)(6) claims and thus, by operation of Section 502(i), pre-petition claims of the Debtor, the Court finds that Dalfort's requested setoff should still be denied. It is undisputed that the Payroll Taxes, whether pre- or post-petition, are "priority claims" under Section 507. The priorities given by Section 507 are expressions of Congressional policy that certain claims against a debtor should be given priority in payment above others. It would completely defeat this statutory scheme if a debtor were allowed to setoff its claims against the creditor, *first* against the creditors priority claims and *secondly* against the creditors general non-priority claims.

42. To do so in the instant case would allow Dalfort to avoid paying the priority claims of the United States in full as required by the Plan of Reorganization and would instead completely eliminate the priority claims and satisfy the remaining claims with stock worth less than 10% of the claims. In equity, therefore, the Court finds that Dalfort's claims against the United States should be first setoff against the *non-priority* claims of the United States in order to preserve the priority payment scheme as expressed in the Bankruptcy Code.

43. As an entity with a claim against Braniff, the United States is a creditor under 11 U.S.C. § 101(9) and 106(c)(1), entitled to claim the right of setoff pursuant to 11 U.S.C. § 553. See 4 *Collier on Bankruptcy*, para. 553.04, n. 5 at 553–11 (15th Ed.1979). The pertinent portion of Section 553 states:

Except as otherwise provided in this section, and in sections 362 and 363 of this title, *this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of*

*the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, * * *.*

The controlling language in the above-quoted statute is that creditors have the right to offset claims "that arose before the commencement" of the case. Thus, the United States has the *right* to offset its $4,495,878.00 debt to Braniff against Braniff's $8,901,045.00 non-priority pre-petition debt. After this offset is accomplished, Braniff will have no claim remaining against the United States to setoff against its post-petition tax debt. Thus, the post-petition Payroll Taxes will have to be paid in cash pursuant to Braniff's reorganization plan. To hold otherwise would render the government's setoff rights under Section 553 meaningless in direct contradiction to apparent Congressional intent.

44. Further support for the proposition that Braniff may not eliminate the United States' right to setoff mutual pre-petition debts is contained in 11 U.S.C. § 506(a). This section provides that allowed claims subject to setoff are to be treated as "secured claims." It is a fundamental principle of bankruptcy law that the Court may not eliminate allowed secured claims without compensation equal to at least the value of the collateral. See 3 *Collier on Bankruptcy*, para. 506.07 (15th Ed.1979). Section 553 specifically recognizes this concept by incorporating 11 U.S.C. §§ 362 and 363. The effect of this incorporation is to permit elimination of the setoff right *only* if the debtor provides adequate protection. See 4 *Collier on Bankruptcy*, para. 553.08[4] (15th Ed. 1979); *In re R.C.I. Enterprises, Inc.*, 22 B.R. 549 (Bankr.S.D.Fla.1982); *In re Princess Baking Corp.*, 5 B.R. 587, 589–90 (Bankr.S.D.Calif.1980).

45. In the case at bar, rather than providing adequate protection for the United States' "secured" right to setoff, Braniff is seeking to eliminate it entirely, and insert in its place a general unsecured claim which will be paid through the plan

with stock worth less than 10% of the total amount of the claim. The Court finds that this does not constitute "adequate protection" for the claims of the United States.

## THE CUSTOMS SERVICE CLAIM

46. The final issue concerns whether Dalfort can use its setoff to extinguish a debt owed by Aetna Casualty & Surety Company ("Aetna") to the United States Customs Service ("Customs"). Prior to the filing of the bankruptcy petition, Braniff was required under the customs laws to execute a bond to secure the payment of duties and penalties for which Braniff might become liable. In this connection, Braniff executed an air carrier blanket bond with Aetna which was then collateralized by a $200,000.00 certificate of deposit. Upon Braniff's default, Aetna became primarily and immediately liable to Customs. This liability of Aetna to Customs was fixed prior to the filing of the bankruptcy.

47. Due to the conflicting demands of Braniff and Customs, Aetna filed an interpleader action in this Court seeking direction. Customs asserts: (1) Aetna is primarily liable on the claim, (2) Aetna cannot assert any setoff right of Braniff and (3) Braniff cannot setoff its debts to the United States against the Customs claim. In support of its position, Customs asserts that where a surety is fully collateralized, as is Aetna, the surety is not entitled to the benefit of the debtor/principal's setoffs against the creditor citing *In re Eastern Freight Ways, Inc.*, 577 F.2d 175, 180 (2nd Cir.1978).

48. Dalfort, correctly in this Court's opinion, asserts that the United States's first argument is irrelevant as Dalfort is seeking the setoff, not the surety. Furthermore, the principles behind not allowing a fully collateralized surety to set-

off its principal's claims are not applicable here.[5]

49. The Court concludes that, in the absence of any problems concerning mutuality of the parties or claims and because the Debtor is seeking to offset not the creditor, the Debtor should be able to direct the manner in which setoff is accomplished. Dalfort requests the Court to direct that the approximately $4.5 million dollars in pre-petition claims against the United States be *first* setoff to extinguish the approximately $155,647.00 in pre-petition debts and penalties that it owes the Customs Service. The requirement of mutuality has been satisfied by the fact that both claims are pre-petition. Furthermore, allowing setoff in the manner suggested by Dalfort will permit the $200,000.00 certificate of deposit to be returned to the Debtor by Aetna. Absent mutuality problems, the Court finds this to be an equitable result.

50. *In re Applied Logic Corp.*, 576 F.2d 952 (2d Cir.1978), analyzed the issue of how setoff should be applied by analogizing to the general law of direction of payment as provided in the *Restatement of Contracts* § 387.

51. The *Restatement of Contracts* provides as follows:

Where more than one matured contractual duty is owed to the same person and these duties are for performances of identical character, such as the payment of money, a payment or other performance capable of discharging in whole or in part, either one or another of these duties, is applied subject to the rules stated in Sections 388–93,

(a) as the debtor, at or before the time of payment or performance, manifests to the creditor an intention to have it applied; or

(b) if the debtor makes no such manifestation, as the creditor within a reason-

---

5. The general rule is that, absent insolvency on the part of the principal, the surety cannot setoff claims of its principal in an action brought against it by the creditor. *Saxis Steamship Co. v. Multifacs International Traders, Inc.*, 375 F.2d 577, 583 (2d Cir.1967). This was to prevent the unjust enhancement of the debtor's estate at the

expense of the surety. For further discussion see *United States v. Morley Const. Co.*, 98 F.2d 781, 789–90 (2d Cir.1938). This rule has been slightly modified to again prohibit a surety from raising an insolvent principal's setoffs if the surety is fully collateralized. *In re Eastern Freight Ways, Inc., supra* at 180.

able time manifests an intention to have it applied; or

(c) if neither the debtor nor creditor makes a reasonable manifestation of intention, as a just regard to its effect on the debtor, creditor, and third persons makes it desirable that it should be applied.

*Restatement of Contracts* § 387 (1932).

52. In *Applied Logic* the debtor did not manifest an intent to direct payment in a particular manner. The creditor then, prior to the filing of the petition, setoff the debtor's bank account against certain specific loans. The Court found subsection (b) applicable, and authorized setoff in the manner sought by the creditor.

53. In contrast, Dalfort, by filing the Setoff Motion, was the first party here to assert setoff. The Court believes, however, that because court approval is required to accomplish setoff, it is most appropriate to apply reasoning similar to the third principle set forth in the *Restatement*. Thus, the Court should determine the application of setoff with just regard to the effect upon the debtor, the creditor, and third persons.

### SUMMARY

54. As an aid to the parties, the Court's decision is summarized as follows:

(1) Because of a lack of mutuality of the parties (*i.e.* the debtor v. the debtor-in-possession), neither the debtor nor a creditor may offset pre-petition debts and claims against post-petition debts and claims.

(2) The Payroll Taxes due to the government are post-petition claims; therefore, the Debtor's pre-petition claim of $4.5 million against the government can only be setoff against Braniff's $8.9 million pre-petition debt to the government.

(3) No equitable grounds exist for Dalfort's requested relief because it would nullify the Congressional scheme for priority claims and render the government's § 553 rights meaningless.

(4) Dalfort's $4.5 million pre-petition claim against the government may first be used to extinguish the $155,647.00 in debts and penalties that it owes the Customs Service.

Accordingly, IT IS ORDERED that Dalfort's Setoff Motion be and it hereby is DENIED.

### EXHIBIT A

STIPULATION REGARDING DALFORT'S MOTION TO ALLOW SETOFF OF CERTAIN CLAIMS OF DALFORT AGAINST THE UNITED STATES AGAINST CERTAIN DEBTS OF DALFORT TO THE UNITED STATES

Dalfort Corporation (formerly Braniff Airways, Incorporated) has filed a Motion to Allow Setoff of Certain Claims of Dalfort Against the United States Against Certain Debts of Dalfort to the United States (Setoff Motion). Although, Dalfort/Braniff and the United States dispute the amount of certain claims and debts which are the subject of this motion, Dalfort/Braniff has not objected to the allowance of the claims of the United States set forth in this stipulation, and contemplates informal resolution of any dispute regarding the amount of the claims. Dalfort/Braniff and the United States (the parties), however, wish to reserve the right to contest the amount and validity of the claims after resolution of Dalfort's setoff motion. The parties wish to stipulate to the amount and status of the claims for sole purpose of resolving the legal issues raised in Dalfort's setoff motion. The parties agree that Dalfort/Braniff reserves its right to object to the amount and status of the United States' claims, and the United States' reserves its right to object to Dalfort/Braniff's claims and to amend the amount of its claims. Therefore, for purposes of resolving the Setoff Motion only, and without prejudice to the Parties' rights as specified herein, and without prejudice to either party's right to dispute any legal

conclusion expressed or implied in this stipulation, the Parties hereby stipulate the following values of the claims and debts described below:

1. Claims Of Dalfort/Braniff Against The United States

 a. Prepetition claims against the General Services Administration of the United States for government transportation requests ("GTRs") — $4,095,992

 b. Prepetition claim against the Federal Aviation Administration ("FAA") for reimbursement for expenses incurred while screening passengers in foreign air transportation — 399,886

 c. Total prepetition claims of Dalfort against the United States — $4,495,878

2. Claims Of The United States Against Dalfort/Braniff

 a. United States' priority claims

 (i) Employment taxes to the Internal Revenue Service ("IRS") incurred through payment of priority wage claims for work done prior to filing petition for reorganization

| | |
|---|---|
| (A) employer's FICA share | $1,200,000 |
| (B) employees' FICA share | $1,200,000 |
| (C) income tax withheld from employees' wages | 1,700,000 |
| (D) unemployment tax | 100,000 |

$4,200,000

 (ii) Other unemployment taxes owed to IRS as priority claims — 11,125

 b. Nonpriority, preparation claims for duties and penalties owed to Customs Service for which Aetna Casualty & Surety Co. is liable as a surety subject to a bond posted by Braniff — 155,647

 Total priority claims and claim covered by Aetna bond — $4,366,772

 c. Other nonpriority, prepetition claims of the United States

 (i) Duties, penalties, and other claims owed to Customs Service not covered by the bond of Aetna Casualty & Surety [1] — 67,369

 (ii) Claims of various government agencies for unused air travel tickets — 2,869,784

 (iii) Claims of the Panama Canal Commission for unused air travel tickets — 59,260

 (iv) Claims of Department of Defense for unused ticket — 234

 (v) Pension excise tax claim of the IRS — 5,595,658

 (vi) Administrative fines, liquidated damages and other claims of the Immigration and Naturalization Service — 201,577

 (vii) Rents and fees owed the FAA for use of facilities at National and Dulles Airports — 102,853

 (viii) Claim of Department of Agriculture for inspection services — 3,512

 (ix) Claim of United States Army and Air Force Exchange Service for Air Freight — 798

 Total nonpriority, prepetition claims not covered by Aetna Surety bond — $8,901,045

 Total claims owed by Dalfort to the United States — $13,267,817

3. Amount By Which Claim of United States Against Dalfort/Braniff Exceed Claims Of Dalfort/Braniff Against United States — $8,771,939

4. Value of Stock To Be Distributed To Unsecured Claimholders

 The value of the stock to be distributed to unsecured claimholders will be worth less than 10% of the value of the claims.

5. With respect to the claims denoted in Paragraph 2(a)(i)(b) and (c) above, representing withheld income and social security taxes, Dalfort actually withheld such taxes from the payment of Section 507(a)(3) wage claims and paid such funds to the United States pursuant to the Order re payment of priority wage claims taxes entered on March 5, 1984.

/s/
DANIEL M. LEWIS
RICHARD P. SCHIFTER
BRIAN P. LEITCH
Arnold & Porter
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036

Attorneys for Dalfort Corporation

/s/
J. CHRISTOPHER KOHN
TRACY WHITAKER
STEPHANIE WICKOUSKI
Attorneys, Civil Division
Department of Justice
Post Office Box 875
Ben Franklin Station
Washington, D.C. 20044

/s/
EDWARD L. ROTHBERG
Attorney, Tax Division
Department of Justice
Room 5B31
1100 Commerce Street
Dallas, Texas 75242

Attorneys for the
United States
(Internal Revenue Service)

---

1. The priority status of $52,359 of these claims is disputed. The United States' appeal of the March 30, 1984, disallowance of priority is presently pending.