**In re Roy Don STEPHENSON and wife, Patsy Gaye Stephenson, Debtors.**

**Bankruptcy No. 587–50276–12.**

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

March 21, 1988.

H. Victor Conrad, Asst. U.S. Atty., Lubbock, Tex., for FmHA.

Max Tarbox, McWhorter, Cobb & Johnson, Lubbock, Tex., for debtors.

Walter O'Cheskey, Lubbock, Tex., trustee.

## MEMORANDUM OF OPINION ON SETOFF

JOHN C. AKARD, Bankruptcy Judge.

The United States of America, acting through its agencies the Farmers Home Administration (FmHA), and the Commodity Credit Corporation (CCC), seeks to setoff sums which Roy Don Stephenson and Patsy Gaye Stephenson (Debtors) are entitled to receive with respect to their 1986 farm crops from the Agricultural Stabilization and Conservation Service (ASCS) under a disaster relief program against obligations due it by the Debtors.

### FACTS

The parties submitted the matter to the Court on stipulated facts which are incorporated herein by reference. In summary, on March 21, 1986 the Debtor, Roy Don Stephenson, executed two contracts entitled "Contract to Participate in the 1986 Price Support and Production Adjustment Programs" with the Commodity Credit Corporation (CCC) which approved them on May

9, 1986.[1]

On October 18, 1986 Congress enacted the Agriculture, Rural Development and Related Agencies Appropriations Act of 1987, Pub.L. No. 99–500, 100 Stat. 1783 (1986 Act) which provided for disaster payments to eligible producers for loss of production due to drought, excessive heat, floods, hail or excessive moisture which occurred during 1986. *See* 1986 Act § 633(B). The 1986 Act required that disaster payments be made in the form of negotiable generic certificates redeemable from commodities held in storage by the CCC. *See* 1986 Act, § 633(B)(9). The disaster payments authorized by the 1986 Act represented approximately 74% of an eligible applicant's lost production. The Debtors suffered a loss and applied on January 27, 1987 for 1986 disaster payments. In February and March 1987 they received payments in negotiable commodity certificates totaling $22,600.34. On March 31, 1987 the Debtors filed a petition for relief under Chapter 12 of the Bankruptcy Code.

On May 27, 1987 Congress passed the Farm Disaster Assistance Act of 1987, Pub.L. No. 100–45, 101 Stat. 318 (1987 Act). The 1987 Act authorized additional disaster payments on 1986 crops sufficient to increase an eligible producer's payments to 100% of lost production. *See* 1987 Act, § 6. Pursuant to the terms of the 1987 Act the Debtors were entitled to $7,829.77 in supplemental 1986 disaster payments payable in negotiable generic certificates. This is the payment which the FmHA sought to setoff against obligations owed to it.

The FmHA participated actively in the confirmation process and the Court confirmed the Debtors' Chapter 12 Plan of Reorganization on August 13, 1987. The Plan contained extensive provisions concerning FmHA and the liens it held, but made no mention of the setoff claims. On September 25, 1987 FmHA filed its motion to be relieved from the automatic stay to permit setoff.[2]

---

1. Apparently the CCC's programs are administered by the ASCS.

2. The CCC joined in the Motion but does not assert a claim against the Debtors.

## DISCUSSION

The Debtors asserted two defenses to the FmHA's motion: first, that the payments under the 1987 Act were postpetition payments and, thus, not subject to setoff against the FmHA's prepetition debt; and, second, that any right of setoff which the FmHA may have had was precluded by confirmation of the Debtors' Plan.

### Setoff

Setoffs are specifically authorized by Bankruptcy Code § 553(a)[3] which states:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—(exceptions which are not applicable to this case).

The holder of a right of setoff is considered a secured creditor under § 506(a) which states:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or *that is subject to setoff under section 553 of this title,* is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or *to the extent of the amount subject to setoff,* as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or *the amount so subject to setoff* is less than the amount of such allowed claim (emphasis added).

It is well established that the government may setoff funds owed by one agency in order to collect debts owed to other agencies. *Cherry Cotton Mills, Inc. v.*

---

3. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are to sections in the Bankruptcy Code.

*United States,* 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946); *In re Sound Emporium, Inc.,* 48 B.R. 1 (Bankr.W.D.Tex.1984); 11 U.S.C. § 106(b) (1979).

In connection with the waiver of sovereign immunity, § 106(b) specifically provides for the setoff of claims by and against governmental units by stating: "[t]here shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate." The only purpose of § 106 is to create a partial waiver of the sovereign immunity of a governmental unit limited to the amount of the governmental unit's claim. The waiver is triggered only when a governmental unit files a claim. *In re Braniff Airways, Inc.,* 42 B.R. 443, 450 (Bankr.N.D.Tex.1984).

In order to qualify for setoff under § 553 the debts must be mutual and they must be prepetition. *Moratzka v. United States (In re Matthieson),* 63 B.R. 56 (D.C.Minn. 1986). The Debtors asserted that, since the 1987 Act was not passed until after they filed their Chapter 12 petition, the payments due them under the 1987 Act could not be prepetition obligations.

In *Matthieson* the debtors signed contracts with the ASCS providing for deficiency payments with respect to their 1984 crops.[4] The debtors filed for bankruptcy during the 1984 crop year and prior to the April 1, 1985 due date of the deficiency payments. The court said "[w]here an obligation exists prior to bankruptcy, it is irrelevant that the exact amount of liability will not be determined until after the bankruptcy petition was filed." *Id.* at 59. The court noted that it was possible there would be no deficiency and, thus, no payment. The court allowed the setoff, noting that the creditor's right of setoff may be asserted in a bankruptcy case where, at the time the petition is filed, the debt is absolutely owing but not presently due or where a definite liability has accrued but is unliquidated. *Id.* at 59. Finding the *Matthieson* decision "well reasoned and persuasive" the District Court under which this court sits adopted the *Matthieson* rationale in *United States v. Parrish (In re Parrish),* 75 B.R. 14 (N.D.Tex.1987).

■ In the instant case, the Debtors' obligations to the FmHA were prepetition. The issue then becomes: Were the payments under the 1987 Act so rooted in the March 21, 1986 contracts as to be considered prepetition obligations of the CCC and ASCS?

The FmHA pointed to the following language in Paragraph 2.1 of the March 21, 1986 contract:

CCC also agrees that deficiency and diversion payments and other benefits, if applicable, shall be made in accordance with the program provisions announced by the Secretary of Agriculture for the crop for the 1986 crop year, the terms and conditions of the contract, the regulations at 7 C.F.R. Parts 713 and 770, and subject to the reduction made in accordance with paragraph 29 of this appendix.

The FmHA asserted that the disaster payments were "other benefits, if applicable" under the prepetition contract, that the Debtors would not have been entitled to the disaster payments had the Debtors not had the contract with CCC, that the disaster payments related to the 1986 crop and that when the bankruptcy petition was filed on March 31, 1987 the Debtors' entitlement to the disaster payments was contingent only upon those payments being authorized by Congress. Congress authorized the payments on May 27, 1987.

The courts in *Matthieson* and *Parrish* relied heavily on § 101(4)(A) which defines a claim as a:

right to payment, whether or not such right is reduced to judgment, liquidated,

---

4. Under the deficiency program, the debtors refrained from planting crops on a specified portion of their tillable acreage, agreed to maintain soil conservation practices on the unplanted acreage, and furnished various reports to the ASCS. In exchange the ASCS agreed to pay the Debtors a deficiency payment if the final deficiency calculation was greater than zero. The deficiency payment was based on a predetermined formula and was dependent upon the end of the year market prices. Consequently the deficiency payments could not be calculated until the end of the crop year and were to be paid on or about April 1, 1985.

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured....

Judge McConnell succinctly stated the rule with respect to prepetition obligations as follows:

> [T]he generally accepted principle [is] that a pre-petition claim which is unmatured, unliquidated or even contingent on the date of the filing of the petition is still considered a pre-petition claim. If the debt is absolutely owed, but not presently due, or definitely liable but unliquidated it is still a pre-petition debt.

*In re Braniff Airways, supra,* at 451.

The *Matthieson* Court reached the same conclusion when it said:

> The creditor's "right of setoff may be asserted in a bankruptcy case even though at the time the petition is filed [the debt] is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated." (Citing *Traders Bank of Kansas City v. Stonitsch (Matter of Isis Foods, Inc.),* 24 B.R. 75, 76 (Bankr.W.D. Mo.1982); *Whitman v. Seedtec International, Inc. (In re Whitman),* 38 B.R. 395, 397 (Bankr.D.N.D.1984)). "Where an obligation exists prior to bankruptcy, it is irrelevant that the exact amount of liability will not be determined until after the bankruptcy petition was filed."

*Matthieson, supra,* at 59. Both *Braniff Airways* and *Matthieson* point out that there must be some obligation at the time the petition was filed even though it is unliquidated, contingent or disputed. In short, the debt must be owing at the time the petition is filed.

When the Debtors filed their petition in this case on March 31, 1987, there was no claim against the CCC for disaster payments under the 1987 Act because that Act was not passed until May 27, 1987. The claim under the 1987 Act could not be classified as a contingent claim on the date these proceedings were filed because the claim did not exist; it did not come into being until the 1987 Act was passed. Apparently, in passing the 1987 Act Congress made it effective only with respect to persons who had signed contracts with the CCC for the 1986 crop year. That, however, would not cause the claim to have arisen at the time the contract was signed. The Debtors' claims under the 1987 Act are clearly postpetition and, therefore, cannot be offset against the FmHA's prepetition claims.

## CONFIRMATION OF PLAN

█ If this Court is incorrect in its conclusion concerning the postpetition character of the Debtors' claims under the 1987 Act, the FmHA's attempted offset is barred by confirmation of the Debtors' Plan of Reorganization on August 13, 1987. The FmHA did not assert its offset until September 25, 1987.

The FmHA argued that its offset right was a lien and that liens were not extinguished by the confirmation of a plan where the plan did not purport to deal with those liens, citing *Simmons v. Savell (In re Simmons),* 765 F.2d 547 (5th Cir.1985) (mechanic's lien on real property) and *Work v. County of Douglas (In re Work),* 58 B.R. 868 (Bankr.D.Ore.1986) (ad valorem tax lien). The FmHA asserted that the Debtor was aware of its claim to setoff because the proof of claim filed in these proceedings by the FmHA listed "ASCS program benefits" as part of the collateral. The FmHA's brief acknowledged that neither the Debtor's Plan nor the FmHA's objections to the Plan addressed FmHA's claims to setoff. Nonetheless, the FmHA now asserts that the Plan should not have been confirmed because it did not provide for FmHA's "allowed secured claim" as required by § 1225(a)(5). The FmHA also asserts that the provisions of § 553 which state that "this title does not affect any right of a creditor to offset a mutual debt" means that its right of offset continued even after the confirmation of a plan.

█ The common law concept of setoff is a right; not a lien. "The right of set-off is an exercisable right, and not a fixed or natural right conclusively established by the mere fact that each of the parties has a claim against the other; until the right is exercised, either party may do what he

pleases with his property." 80 C.J.S., *Set-off and Counterclaim* § 3 (1953). "The law is settled that the set-off provided for in § 68 of The Bankruptcy Act (predecessor to § 553) is not automatic or self-executing. The privilege is one which must be asserted; otherwise, it is considered waived and lost." *In re Metropolitan International, Inc.*, 616 F.2d 83, 85 (3d Cir.1980). *See also* 3 *Collier on Bankruptcy*, ¶ 553.07 (15th Ed. 1979). Three steps must be taken to maintain a setoff. First, there must be a decision to exercise the right to setoff; second, a subsequent action which completes the setoff; and, finally, a record which verifies that the action was taken. *In re Archer*, 34 B.R. 28, 30 (Bankr.N.D. Tex.1983).[5] The mere fact that FmHA listed ASCS program payments as part of the collateral in its proof of claim evidenced no intent to exercise a right of setoff. There was no evidence of any intent on FmHA's part to exercise its right of setoff until it filed its motion to be relieved from the automatic stay on September 25, 1987.

The record in this case reflected that the FmHA took a very active part in the confirmation process. It entered into extensive negotiations with the Debtors and participated in conferences held by the Trustee prior to confirmation. As a result of these activities the Debtors made certain changes in their Plan prior to confirmation. The FmHA agreed to the treatment of its various secured claims in the Plan (but none relating to the setoff) and agreed that its deficiency claim would be in the amount of $228,951.42. The Debtors' Plan provided that their net disposable income for a period of three years will be paid to the Trustee for distribution to the unsecured creditors. The Debtors asserted that the deficiency claim of the FmHA represented approximately 80% of their unsecured debt, so that most of the disposable income will be paid to the FmHA. With these assurances and understandings, the FmHA did not oppose the confirmation of the Debtors' Plan of Reorganization.

Section 1227 sets out the effect of confirmation of a plan under Chapter 12 of the Bankruptcy Code:

(a) Except as provided in section 1228(a) of this title, the provisions of a confirmed plan bind the debtor, each creditor ... whether or not the claim of such creditor ... is provided for by the plan, and whether or not such creditor ... has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as provided in section 1228(a) of this title and except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

Thus both the Debtor and the FmHA are bound by the provisions of the confirmed Plan. The cases on liens cited by the FmHA are not applicable because the asserted setoff is not a lien but rather a right which may be waived. The FmHA's failure to assert its setoff rights prior to confirmation constituted a waiver of those rights because the confirmation of the Plan vested the property in the Debtors "free and clear of any claim or interest of any creditor provided for by the plan." *Id.* This is especially true where the FmHA actively participated in the confirmation process and agreed to the amount of its unsecured deficiency.

It is true that § 506 treats setoffs, along with liens, as secured claims. However, this does not raise a setoff to the character of a lien. If a setoff were a lien it would not be necessary to specifically mention setoffs in § 506. Additionally, § 506 contains no statement that a creditor's right of setoff cannot be waived.

While § 553 provides that title 11 shall not affect a creditor's right of setoff, the

---

**5.** In a bankruptcy context the Court's order allowing a setoff would constitute the third element of a record verifying the action.

section nowhere prohibits the creditor from waiving that right. The FmHA waived its right to setoff by its failure to exercise that right prior to confirmation. Should there be any conflict between the provisions of § 1227 and § 553, the more specific provisions of § 1227 concerning a Chapter 12 plan must be given effect over the general provisions of § 553 in order to carry out the Congressionally expressed purpose of rehabilitation of family farmers in Chapter 12. A specific statute is not controlled or nullified by a general statute, regardless of priority of enactment, absent clear intent on the part of the legislators that it do otherwise. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, —— U.S. ——, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *See also, In re Player's Pub, Inc.*, 45 B.R. 387 (Bankr.D.Mass.1985) (stating that where two statutes apply, the more specific provision controls).

Section 1207(a)(1) provides that property of the estate includes property which the Debtors acquire after the commencement of the case but before the case is closed and § 1207(b) provides that the Debtors have possession of such property except as provided in the Plan.[6] Therefore, the disaster payments attributable to the 1987 Act are property of the Debtors' estate and may be used by the Debtors for the benefit of the estate.

For the foregoing reasons, the FmHA's Motion to be Relieved From the Automatic Stay to setoff the disaster payments under the 1987 Act will be denied.

ORDER ACCORDINGLY.[7]

---

**6.** There is another exception if the debtor is removed as the debtor-in-possession but that is not applicable in this case.

**7.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.