**In re R.L. THOMAS, Jr., Debtor.**

**Bankruptcy No. 587–50118–7.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

March 30, 1988.

Gerald Huffaker, Huffaker, Green & Huffaker, Tahoka, Tex., for debtor.

H. Victor Conrad, Asst. U.S. Atty., Lubbock, Tex., for FmHA.

Gail Robertson, Attorney–Advisor, Small Business Admin., Lubbock, Tex., for SBA.

Ray Fargason, Brown, Harding, Brown, Tabor & Fargason, Lubbock, Tex., trustee.

Special Procedure Staff, District Director of I.R.S., Chief Special Procedure Section, Dallas, Tex., for I.R.S.

**MEMORANDUM OF OPINION CONCERNING SETOFF**

JOHN C. AKARD, Bankruptcy Judge.

The United States filed a Motion to be Relieved From the Automatic Stay on behalf of the Farmers Home Administration (FmHA) the Small Business Administration (SBA) and the Commodity Credit Corporation (CCC) to setoff against obligations owing to those agencies sums to which R.L. Thomas, Jr. (Debtor) is entitled as disaster payments with respect to his 1986 crops. The Debtor opposed the setoff, but stated that if the Court permitted setoff his tax obligations to the Internal Revenue Service (IRS) should be included.

## FACTS

The Court received this matter on stipulated facts which are incorporated by reference. In summary, on April 16, 1986 the Debtor executed two contracts with the CCC for his 1986 crops entitled "Contract to Participate in the 1986 Price Support and Production Adjustment Programs."

On October 18, 1986, Congress authorized the 1986 disaster payments in the Agriculture, Rural Development, and Related Agencies Appropriations Act of 1987, Pub.L. No. 99–500, 100 Stat. 1783 (1986) (1986 Act). The 1986 Act made disaster payments available to eligible producers for losses of production due to drought, excessive heat, floods, or excessive moisture which occurred during 1986. The 1986 Act required that the disaster payments be made in the form of negotiable generic certificates redeemable from commodities held by the CCC. The disaster payments authorized under the 1986 Act represented approximately 74% of an eligible producer's lost production.

On February 17, 1987 the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. Ray Fargason is the Trustee-in-Bankruptcy.

On May 27, 1987, Congress passed the Farm Disaster Assistance Act of 1987, Pub.L. No. 100–45, 101 Stat. 318 (1987) (1987 Act). The Act authorized supplemental disaster payments for 1986 crops to eligible producers payable in the form of negotiable generic commodity certificates, sufficient to increase the eligible producers' recovery to 100% of lost production. The Agricultural Stabilization and Conservation Service (ASCS), an agency of the United States within the United States Department of Agriculture, issued these commodity certificates.

When the Debtor filed his petition on February 17, 1987, he owed $77,961.61 to FmHA, an agency of the United States within the United States Department of Agriculture, $102,141.91 to the SBA, an agency of the United States, $361.12 (arising out of overpayments to the Debtor) to the Commodity Credit Corporation, an agency of the United States within the Department of Agriculture, and $4,365.10 plus penalties and interest for 1985 income taxes and $12,653.00 for 1986 income taxes to the Internal Revenue Service. The FmHA and SBA held liens on 300 acres of land. Neither the Debtor nor the Trustee contested the validity of those liens.

## MUTUALITY OF THE PARTIES

The Debtor asserted that the mutuality requisite for setoff[1] is missing when funds are paid to the Debtor by one government agency, but the Debtor's obligation is to another government agency. The Debtor pointed out that § 101(14) of the Bankruptcy Code[2] defines "entity" to include a "person, estate, trust, *governmental unit,* and United States trustee" (emphasis added) and asserted that each governmental unit constituted a separate entity. Thus he concluded that obligations owed the Debtor by one governmental unit could not be offset by the Debtor's obligations to a different governmental unit.

In support of his argument the Debtor cited *In re Rinehart,* 76 B.R. 746 (Bankr.S. D.1987) which prohibited the setoff of obligations the debtor owed the SBA from monies payable to him by ASCS. In *Rinehart* the court noted that this issue was raised but not resolved by the former judge of this court, Bill H. Brister, when he decided *In re Wilson,* 49 B.R. 19 (Bankr.N.D. Tex.1985).

The right of the Federal Government to setoff amounts due to it from amounts which it is obligated to pay has been long recognized. In *Gratiot v. United States,* 40 U.S. (15 Pet.) 336, 10 L.Ed. 759 (1841), the Supreme Court permitted the government to setoff debts which an army general owed the Department of Treasury against his pay. The Court said:

> The United States possesses the general right to apply all sums due for any such

---

1. Setoff of mutual prepetition debts is permitted by § 553 of the Bankruptcy Code.

2. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are to sections in the Bankruptcy Code.

pay and emoluments, to the extinguishment of any balances due to them by the defendant on any other account, whether owed by him as a private individual, or as chief engineer. It is but the exercise of the common right, which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him. *Id.* 40 U.S. at 370. In *Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946), a debt to the Reconstruction Finance Corporation was setoff against a refund of flour taxes owed to the claimant under the Agricultural Adjustment Act. The fact that the Reconstruction Finance Corporation was another entity did not prohibit the setoff. The court stated: "That the Congress chose to call it a corporation does not alter its characteristics so as to make it something other than what it actually is, an agency selected by Government to accomplish purely governmental purposes." *Id.* at 359, 66 S.Ct. at 730. Although these Supreme Court cases did not arise in a bankruptcy context, their principles have long been recognized in bankruptcy. *See, e.g., In re Sound Emporium, Inc.,* 48 B.R. 1 (Bankr.W.D.Tex.1984). This Court does not think that Congress intended to change this long-established governmental right of setoff when it adopted the definition of entity in § 101(14). Certainly, nothing in the legislative history indicated such an intent. This Court respectfully declines to follow *Rinehart.*

This conclusion is in harmony with the regulations issued by the Secretary of Agriculture concerning setoff of ASCS payments "against debts of such persons owing to any department or agency of the United States." 7 C.F.R. § 13.1 (1987). The regulations permit obligations owed the SBA by a non-bankrupt debtor the SBA to be setoff against ASCS payments owed to that debtor. The *Rinehart* decision does not allow such a setoff in a bankruptcy case. This Court does not consider that the purposes of the Bankruptcy Code would be fostered by allowing a debtor to improve his position vis a vis the SBA merely by filing a bankruptcy petition. Therefore,

the Court holds that the mutuality of parties requisite for setoff is present.

## SETOFF

This Court recently discussed the rights of governmental agencies to setoff against a debtor's 1986 disaster payments. *See In re Stephenson,* 84 B.R. 74 (Bankr.N.D.Tex. 1988). In *Stephenson,* as here, the issue was whether the Debtor had a "claim" as that term is defined in § 101(4)(A) at the time he filed his bankruptcy petition. Congress passed the 1986 Act on October 18, 1986. The Debtor became eligible for 1986 Act payments as a result of the April 16, 1986 contracts. Thus, all funds payable to the Debtor under the 1986 Act for which the Debtor had a claim on February 17, 1987 are subject to setoff for the Debtor's obligations to the governmental agencies.

When the Debtor filed for bankruptcy on February 17, 1987, however, Congress had not passed the 1987 Act. Consequently, when he filed, the Debtor had no "claim" to payments under the 1987 Act and governmental agencies may not setoff amounts due the Debtor under the 1987 Act.

The question then presented is: To whom should the payments authorized by the 1987 Act be made? When the Debtor filed bankruptcy on February 17, 1987, the Trustee succeeded to all the rights accorded the Debtor by prepetition contracts, including the contracts of April 16, 1986. § 541. The Trustee stands in the position of the Debtor with respect to those contracts. *Id.* The Debtor's rights to disaster payments under the 1987 Act arose because of the April 16, 1986 contracts. Thus, any disaster payments due the Debtor under the 1987 Act must be paid to the Trustee.

## INCOME TAX OBLIGATION

The Debtor sought to have his income tax obligation included in the setoff and requested that it be paid in full prior to payment to other governmental agencies. The Debtor pointed out that since the income tax obligation is entitled to priority

under § 507(a)(7) this priority should be recognized in the setoff as well. The Debtor requested that the United States' attorney include the IRS claim in the Motion to Lift Stay; he refused because the IRS had not referred the tax matter to him. The FmHA, CCC and SBA opposed the inclusion of the IRS because these agencies requested setoff and the IRS did not and, additionally, because the setoff right is contractual.

With respect to the contractual argument, the government pointed out that a setoff right is created in the March 16, 1986 contracts, Paragraph 21.A., which states that "[s]etoffs for debts owed to agencies of the U.S. Government shall be made." Paragraph 15.A of the contracts incorporates by reference Part 13 of Title 7 of the Code of Federal Regulations. The Regulations provided that the setoff shall be applied first to debts to CCC and ASCS, then to debts of other agencies of the Department of Agriculture, then to debts to the Internal Revenue Service and, finally, to debts to other governmental agencies. 7 C.F.R. § 13.7 (1986).

Part 13 of Title 7 of the Code of Federal Regulations dealing with setoffs provides an administrative procedure for the setoff of debts to governmental agencies against ASCS payments. These regulations, including the priorities contained therein, apply when the setoff is made administratively outside of the bankruptcy context. These regulations were adopted pursuant to 5 U.S.C. § 103 which allows the head of each executive department to prescribe regulations for "the government of his department, the conduct of its employees, the distribution and performance of its business, the distribution and performance of its business, and the custody, use, and preservation of its records, papers and property." Regulations adopted under such authority clearly do not bind this Court and

do not apply when the matter is in the bankruptcy court.

The oft-stated purpose of a bankruptcy is to give the debtor a "fresh start." To allow the government to decide which agencies would seek setoff and which agencies would not, or to allow the government to establish its own priorities of distribution would severely impair this purpose. By the same token, a debtor should not be able to control the order of setoff to his own advantage and to the detriment of some governmental agencies. The priority allowed for *unsecured* claims of governmental units for taxes under § 507(a)(7) is not applicable in a setoff situation.

The IRS filed a claim in these proceedings for the 1985 and 1986 income taxes.[3] Setoff of this claim is mandated by § 106(b) which states: "There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate." No objection was filed to the IRS claim. Therefore, it is deemed allowed and the payments due under the 1986 Act are property of the estate.

Marshaling assets for the benefit of secured creditors is appropriate in a bankruptcy proceeding. See this Court's opinion *In re Mid–West Motors, Inc.*, 82 B.R. 439 (Bankr.N.D.Tex.1988). although setoff is not a lien, it is treated as a secured claim by § 553. The Court finds that all agencies of the United States government should share in the setoff on a pro rata basis after the FmHA and the SBA have foreclosed on their other collateral.[4]

### CONCLUSION

The Automatic Stay will be relieved to allow the FmHA and the SBA to foreclose their liens on the Debtor's real property. The proceeds of such sale shall be applied first to the expenses of sale, and the balance shall be applied to those creditors in

---

3. Claim filed June 26, 1986 and amended November 23, 1987.

4. This addition of claims owed by other governmental agencies should be applied only where the Debtor brings their existence to the attention of the Court in the lift stay proceeding prior to the granting of an order to modify the stay to permit the setoff. If the Debtor fails to bring those claims to the attention of the Court within that time, the Debtor has waived his right to have other governmental agencies participate in the setoff.

the order of the priority of their liens (or as they shall otherwise agree) in accordance with customary practices. The remaining balances due to those creditors shall participate in the setoff described below.

The Automatic Stay will be relieved to allow the FmHA, the SBA, the CCC and the IRS to setoff against the disaster payments owed the Debtor under the 1986 Act. Such setoff shall be on a pro rata basis, based upon the amount owed each creditor on February 17, 1987, the date of the filing of the bankruptcy petition, less amounts received by the FmHA and/or the SBA from the sale of the real property.

The Motion to be Relieved From the Automatic Stay will be denied with respect to the disaster payments under the 1987 Act.

ORDER ACCORDINGLY.[5]

---

**5.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.