The Attorney General, *ex rel.* Nicholas J. Marselus, *vs.* The Ministers, Elders and Deacons of the Reformed Protestant Dutch Church of the City of New York.

C. S., by will made in 1684, devised certain land at Fordham for the use of the "Nether Dutch Reformed Congregation, within the city of New York, for the support and maintenance of their minister, ordained according to the church orders of the Netherlands, now at present here in being, or hereafter to be called, ordained or to come." He further directed the said land to be conveyed by his executrix within six months after his decease, &c. to the elders or overseers of the said Nether Dutch Congregation for the use of the minister of the said congregation as therein before expressed. He also directed that these lands should never be alienated or disposed of, and appointed his wife M. his executrix. After the death of the testator, his widow married H. S. and in 1694 she conveyed the land to N. B. and others, elders and overseers of the said church, their successors &c. upon the same trusts, substantially, as were contained in the will. H. S. then the minister of the only Dutch Reformed Church in the city of New York, joined with his said wife M. in the execution of this deed.

Attorney General *v.* Reformed Protestant Dutch Church.

In 1723 J. H. made his will whereby he devised certain land in the city of New York to the ministers, elders and deacons of the Reformed Protestant Dutch Church of the city of New York, their successors &c. for the payment and satisfying of the yearly stipend, salary &c. of the respective ministers who should from time to time be duly called to the ministry of the *said church*.

The defendants were incorporated by royal charter in 1696, by the name now used. In 1753 this charter was confirmed by colonial act, approved in 1755, which act authorized the sale of the land at Fordham, devised by C. S., and directed the proceeds to be reinvested &c. Previous to 1767 that land was sold, and the money was paid into the common funds of the church. No reinvestment in land was ever made, and there was no proof that any such fund was now in existence, or possessed by the defendants. At the date of the will of C. S. there was but one congregation or church in the city of New York of the Reformed Protestant Dutch denomination, and that was incorporated by the said charter in 1696, and empowered to admit other members, and create a succession of officers. At the death of J. H. in 1723, there was but one congregation and one church organization of this denomination, although more than one minister then officiated, and another church edifice was being built.

In an action by the relator, a minister of the Reformed Protestant Dutch Church, officiating over an incorporated church of that denomination in the city of New York, brought on behalf of himself and all other ministers of the same denomination officiating in the city of New York, to have the two funds arising from the said devise made by C. S. and J. H. which were alleged to be in the possession of the defendants as trusts for the support of the ministers of churches in the city of New York of the Reformed Protestant Dutch denomination, declared and adjudged to have been created for the support of all the churches of the said Dutch Reformed denomination in the said city.

*Held,* 1. That the terms of the devise of C. S. were such as to exclude any congregation or minister from participating in the benefit of that devise, except that particular one which was described in, and existed at the time of, the devise.

2. That it must be assumed, at this late day, that when that corporation was incorporated, in 1796, the "elders or overseers" transmitted the land devised to them by C. S. to the new corporation in a lawful manner, so that the corporation became vested with the title, and charged with the trust.

3. That the colonial act, of 1753, confirming the charter, and authorizing the sale of that land, contemplated and recognized the defendants' corporation as then the actual owner.

4. That the evidence adduced on the part of the relator, as well as his own allegations, established the fact that he was a minister of another congregation, having a separate and distinct corporate existence from that of the defendants.

Attorney General v. Reformed Protestant Dutch Church.

5. That the defendants' corporation must be considered as having legally succeeded to the congregation whose "elders or overseers" were entitled to, and held, the lands devised by C. S.; and that the corporation, from the time of the charter in 1696, was lawfully empowered to administer the income of the land at Fordham for the "support and maintenance of their minister."

6. That the colonial act of 1753 in no manner extended the application or benefit of that fund to congregations or ministers who were not organized or embraced within the corporation thereby confirmed.

7. That J. H., in the will executed by him, had in view the only church of the Dutch Reformed denomination then in existence in the city of New York; and that the relator was not a minister of the congregation for whose benefit the bequest was made, but a minister of another incorporated society or congregation.

8. That the provisions of the charter of 1696 afforded conclusive evidence that it was a certain congregation of the Reformed Protestant Dutch Church, then existing in the city of New York that was thereby incorporated; and that neither that charter, nor the colonial act of confirmation in 1753 furnished any evidence that it was intended to incorporate, or confirm a charter to incorporate, a *denomination* of christians in that city.

9. That the objects to which such corporation might lawfully apply the income of its property were enlarged by the colonial act; but that nothing was enacted diverting the application of its funds to the support or maintenance of the ministers of other corporations, or other congregations not within the organization of the defendants' corporation. The colonial act exhausted the authority to create a new scheme for the benevolent administration of this charity under the doctrine of *cy pres.*

10. That there being no reason to doubt that the trusts under both wills had been managed in conformity with the directions of the testators, and of the charter of 1696, and the colonial act of 1753, there was no principle upon which the court could interpose to disturb the present application of the two funds arising from the devises.

A trust which has been administered for more than one hundred years without question as to the right or the manner of its administration, ought not to be disturbed without clear and unequivocal evidence that the true terms of the trust have been disregarded, and that the just and legal rights of the party complaining have been infringed.

ON appeal to the general term from the judgment of the special term, dismissing the complaint herein with costs.

The relator is a minister of the Reformed Protestant Dutch Church, officiating over an incorporated church of that denomination in the city of New York. The defendants are also incorporated under the name by which they are sued in

this action, and embrace in their organization the congrega-
tions and church edifices commonly known as " the collegiate
churches." The action is brought on behalf of the relator
and all other ministers of the same denomination officiating
in the city of New York. The relief sought is to have two
funds, alleged to be in the possession of the defendants as
trusts for the support of the ministers of churches in the city
of New York of the Reformed Protestant Dutch denomination,
from the benefit of which the defendants have excluded the
relator and other ministers of that denomination, declared
and adjudged to have been created for the support of the
ministers of all the churches of the said Dutch Reformed
denomination in the city of New York. One fund is al-
leged to have been derived under the will of Cornelius
Steinwyck, in 1684, whereby the testator devised some land at
Fordham, in Westchester county, for the use of the " Nether
Dutch Reformed Congregation, within the city of New York,
for the support and maintenance of their minister, ordained
according to the church orders of the Netherlands, now at
present here in being, or hereafter to be called, ordained or
to come." He further directed the said land to be conveyed
and transferred by his appointed executrix within six months
after his decease, or upon lawful demand, to the elders or
overseers of the said Nether Dutch Congregation, for the use
of the minister of the said congregation as therein before ex-
pressed. He also directed that these lands should never be
alienated or disposed of, and appointed his wife, Margueretta,
his executrix. The widow of Steinwyck married Rev. Hen-
ricus Sellyers, after the death of the testator, and in 1694 she
conveyed the said land to Nicholas Bayard and others, elders
and overseers of the said church, their successors &c., upon
the same trusts, substantially, as are contained in the said
will. The language is slightly different, but it is not necessary
to state it more specifically, as the executrix could not alter
or create any new trust in executing the power conferred upon
her by the said will. Rev. Henricus Sellyers, then the min-

ister of the only Dutch Reformed Church in the city of New York, joined with the said executrix, then his wife, in the execution of this deed.

The other fund is now in the possession of the defendants and was derived under the will of John Harbendinck in 1723, whereby he devised certain land in the city of New York to the ministers, elders and deacons of the Reformed Protestant Dutch Church of the city of New York, their successors &c., for the payment and satisfying of the yearly stipend, salary and maintenance of the respective ministers, which from time to time, and at all times hereafter, shall be duly called to the ministry of the *said church.*

The defendants were incorporated by charter, May 11th, 1696, by King William 3, by the name now used. In 1753 this charter was confirmed by colonial act, approved 1755. The colonial act authorized the sale of the land at Fordham devised by Steinwyck, and that the proceeds be reinvested, &c. At some period before 1767 the Fordham land was sold, and the money was paid into the common funds of the church. No reinvestment in land was ever made, and there is no evidence establishing that any such fund is now in existence, or possessed by the defendants.

At the time of the devise made by Steinwyck there was but one congregation or church in the city of New York of the Reformed Protestant Dutch denomination. This religious organization was incorporated by the charter aforesaid in 1696, and empowered to admit other members, and create a succession of officers.

At the death of Harbendinck in 1723, there was but one congregation, and one church organization of this denomination, although more than one minister then officiated, and the construction of a second church edifice was then in progress.

The action was tried at the New York circuit and special term, before Justice DAVIES, without a jury, in January, 1858. The following opinion was subsequently delivered by

that justice, upon the motion of the defendants to dismiss the complaint, made at the close of the plaintiff's evidence.

DAVIES, J. " At the time the complaint was filed, the income and revenues derived from the trust created by the wills of Steinwyck and Harbendinck, had for more than one hundred years been applied by the defendants and their predecessors to the support of the ministers called by and ministering to the congregations under their control, and forming parts of their corporation. This application had been made to the exclusion of the relator, and all others similarly situated. The presumption arising from this lapse of time, and the uniformity of the practice is, that such application was in strict conformity with the terms of the trust.

Sir J. Romilly, in *Attorney General* v. *Master and Brethren of the Hospital of the Holy Cross*, (21 *L. and Eq. Rep.* 397,) says, ' Undoubtedly, when the legal origin of a charity or a right is left in obscurity, the courts will presume, from the uniformity of the practice or use, that it is in accordance with the original foundation, or right, and will presume whatever may be necessary to give it validity.'

Applying this rule to the present case, it might with truth be contended, in view of the long usage of applying these revenues to the sole support of the ministers of the corporation represented by the defendants, and the acquiescence in that usage by those standing in the position of the relator, that this court is bound to assume that such practice is in accordance with the intent of the creators of these trusts; but if the real origin of the trusts is shown and clearly ascertained, it is well settled that nothing can be presumed to the contrary of that which is established by the evidence. It therefore becomes necessary to ascertain whether the relator has established the trusts to be of the character alleged by him; and whether he has shown himself to be a *cestui que trust*, and entitled to participate in the benefits arising therefrom; and whether the trusts, if established, are of the char-

acter which this court, in the exercise of its equity jurisdiction, can enforce.

I shall first consider the rights of the relator (if any) as derived from the will of Steinwyck. It is to be observed that the lands devised by that will were given to the Nether Dutch Reformed Congregation within the city of New York, for the support of *their minister*. That was a known congregation at the time, and which is now represented by the defendants. I am unable to perceive upon what principle the property thus given can be taken and applied to the support of ministers of other churches and congregations. The relator has not shown any right to be regarded as a *cestui que trust*, or entitled to participate in the benefits of the trust thus created. It is not sufficient to establish that he is a minister of the Reformed Protestant Dutch Church, and professing the same faith with the minister, or the successors of the ministers, of the Nether Dutch Reformed Congregation.

This view was taken by the justice at special term, who, upon the facts stated in the complaint, and which have not been strengthened by the testimony in the case, held that this was a very plain devise for the benefit of that body known as the Nether Dutch Reformed Congregation, within the city of New York, or of their minister, and for none other, although professing the same faith. The same justice adds : ' The will is drawn with care, and with a knowledge of the use of words, although not the style of a common law conveyance ; and if the testator had intended to create a trust for the benefit of *all* ministers in the city of New York of the same faith, he would easily have found words to have expressed that intention. Instead of this his devise was limited to the proper use of the one congregation, and to the support of *their* minister alone ; the addition that he should be ordained according to the church orders of the Netherlands was not to enlarge the number of the beneficiaries to all ministers so ordained in the city, although not ministers of the congregation, but to secure conformity in the ministers of that con-

gregation, both in faith and discipline, to those views of religion which the devisor regarded as most conformable to holy writ. The charter granted in 1696 to the defendants, confirms their title to the lands, and is equally clear in its limitation of the uses for which the property is held.'

From what has been said, it can hardly be necessary to add, that I entirely concur in the views thus expressed. The reasons urged for such conclusions seem to be sound and satisfactory, and it follows that if these lands or their proceeds were now in existence, they could not be applied as sought for by the complaint in this cause.

But a fatal difficulty remains to be noticed, in maintaining this action, as to the lands of Steinwyck. It is averred in the complaint that in pursuance of the act of 1753, the defendants sold lands devised to them by Steinwyck for a very large amount of money, and appropriated the proceeds to the purchase of other lands in the city of New York, which were of great value and yielded a large annual income. And the complaint prays judgment of this court that the defendants may be decreed to hold the lands, premises and property purchased with or arising out of the avails of the sale of the manor of Fordham, upon the trust to appropriate and apply the revenues and income thereof to the payment of the salaries of the relator and other ministers similarly situated. The defendants say they have no knowledge of the sale of said lands, or of the appropriation of the proceeds to the purchase and improvement of other lands in the city of New York. The act of 1753, authorizing this sale, directed the proceeds to be applied to the purchase of other lands and real estate which would produce a greater revenue and income. In the remonstrance presented to the governor and council by Hardenbrook and others in 1767, it is alleged that the laying out of the moneys arising from the sale of the manor of Fordham in the purchase of the lands, according to the directions of the act, had not been done by the defendants; and this is admitted by the defendants in their answer, dated September

23d, 1767. And it was proven on the trial of this cause, that no lands had been purchased with the proceeds of the sale of the manor of Fordham. The money which was raised on the sale went into the general funds of the church, for church purposes, and it cannot be traced. The attempt, therefore, to show that any lands or other property are now held by the defendants as the proceeds of the sale of the manor of Fordham has entirely failed, and, consequently, all claim by the relator upon the defendants, in consequence of or in any manner arising out of the will of Steinwyck also failed. Whatever was derived under that will would seem to have long since disappeared, and with it all claim of any interest in what has ceased to exist.

The only remaining question for consideration is that growing out of the will of Harpendinck.

The justice at special term held that the devise in this will, as in that of Steinwyck, was exclusively for the benefit of the ministry of the church of the defendants. He says : 'At this time, the defendants being incorporated by the name of The Minister, Elders and Deacons of the Reformed Protestant Dutch Church of the City of New York, and those words being used in the will to describe the only body for whose exclusive benefit the devise was made, and to whom alone, by express direction, there was to be any accountability for the income of the property, show that the holder intended that body alone to have the right to the income of his property, without accountability to others, whether of the same communion in faith or not.' For the reasons before suggested, these views appear to me sound and unanswerable. This is on the assumption that the devise to the defendants is legal, and the trust created such as is recognized by our laws, and which a court of equity will enforce. On the argument in the supreme court of the United States of the case of Harpendinck against the defendants, (16 *Peters,* 445,) it was contended on the part of the heirs-at-law of the devisor, that the devise to these defendants of the lands mentioned in the

will was void. It was said that various stratagems, at different times, had been resorted to by the clergy to defeat these enactments (the statutes of mortmain and of wills) by a resort to the creation of uses and trusts, and long leases. Such statutes being in force in the colony of New York, it was argued that a colonial act of the legislature, even though approved by the king in council, could not repeal, alter, or change them. That it was not a prerogative of the king to make dispensation of an express statute : that the charter of incorporation under which the defendants allege a right to take the estate in question, can be of no avail whatever, because it was not in the power of the sovereign to permit that to be done which the laws of the kingdom prohibited. On the part of the defendants, it was conceded for that argument, that the will was void, not by virtue of the mortmain acts, but of the exception in the statute of wills of 34 Henry 8th, ch. 5, and which statute in terms was re-enacted in New York. (*See* 3 *R. S. 1st ed. App. p.* 51.) By the first section of this act, any person was at liberty, and had full power, to give his lands by his last will and testament in writing, to any person or persons, *except bodies politic and corporate.* In the revision of 1813, the same exception was contained. (1 *R. L.* 364, § 1.) In the revision of 1830, the exception was altered into a prohibition, the statutes declaring that no devise to a corporation shall be valid, unless such corporation be expressly authorized by its charter, or by statute, to take by devise. (2 *R. S.* 57, § 3.)

In *Bogardus* v. *Trinity Church,* (4 *Paige,* 183,) the learned counsel for the defendants argued, that ' There is a distinction between an incapacity to hold property beyond a certain amount, and that of a corporation to take by devise under a will. In the latter case there is an entire want of power both to devise and take, the prohibition being in the statute of wills. The sole authority to devise being derived from the statute of wills, a devise not authorized by that statute is absolutely void.' That the statute of 34 Henry

8th, concerning wills, was in force in the colony at the time Harpendinck made his will, cannot be questioned. This position is fully sustained by the chancellor in the case of Trinity Church, cited *supra*, and the authorities there referred to. The case of *McCartee* v. *Orphan Asylum*, (9 *Cowen*, 437,) decided in the court of errors, held that a devise of real estate to a corporation was void, within the statute of wills. (*See also Jackson* v. *Hammond*, 2 *Caines' Cas. in Er.* 337. *Ayres* v. *Methodist Epis. Church*, 3 *Sand. S. C. R.* 351.) I must, therefore, hold this devise by Harpendinck, in his will of 1723, as void by the law of this state.

The next question presented is, whether, the devise being void, this court has any power to interfere to declare a trust, or to execute, or in any way direct the execution of a trust thus wholly void ? From an examination of the cases referred to on the argument, it would seem to be clearly settled that it cannot. (*Ayres* v. *Methodist Church*, *supra*. *Kuypers* v. *Reformed Dutch Church*, 6 *Paige*, 570. *Van Kleeck* v. *Same*, *Id.* 600. *S. C.* 20 *Wend.* 457.) It seems to me, therefore, clear that this court cannot interfere with the defendants in reference to the trust which it is alleged was created by this void devise.

But it was urged on the argument, that the defendants having claimed in the United States court that they held title under the will of Harpendinck, they are now estopped from denying that they so held, and equally from denying the validity of such title. From an examination of this case, I do not perceive that the defendants claimed there that the will was valid. They relied on forty years' adverse possession, claiming to hold for themselves in fee simple. The justice who delivered the opinion of the court says : ' To cover the possession no paper title is invoked; substantial enclosures and actual occupancy for forty years are relied on in substitution of a valid paper title.'

But this question of estoppel, even if the facts were as assumed by the learned counsel for the defendants, is of very

.doubtful application to the present case. The doctrine of estoppel is a mere technical rule, and is not regarded with much favor in any court, particularly in courts of equity. (*Van Wyck* v. *Seward,* 6 *Paige,* 65.) It seems to me that it has no force in this case, for the reasons suggested.

Neither can this devise be sustained, in my judgment, as a charitable or pious use or trust. The principles settled by this court in the case of *Beekman* v. *The People,* (27 *Barb.* 260,) are quite conclusive on this point. *Williams* v. *Williams* was sustained on the ground that the trustee was in that case competent to take, it being a bequest of personal property, and there being a competent trustee, with a certain and defined object, the trust was sustained. But the court of appeals in the case of *Owens* v. *The Missionary Society,* (4 *Kern.* 380,) held that where the trustee was not authorized to take, the bequest did not vest, and the trusts could not be executed. That it was essential to maintain and execute a trust, that there should be a competent trustee to take, and such trustee failing, there was no power in a court of equity to execute the trust, *cy pres* or otherwise.

These defendants not being competent to take these lands by devise, it follows that no competent trustee to take exists, and that therefore this court has no power to decree an execution of the trust, even though one had been established by the will of Harpendinck in favor of the relator.

The motion of the defendants to dismiss the complaint is granted, and the same is accordingly dismissed with costs."

. From the judgment entered upon this decision the plaintiff appealed.

*P. Y. Cutler,* for the appellant.

*D. Lord,* for the respondents.

*By the Court,* LEONARD, J. The defendants have denied any knowledge of the Steinwyck trust. They assert that they have no lands derived from that fund. It thus became necessary that the relator, to sustain his case in this respect, should prove its existence at the present time in some form, or that the fund has been lost by the malfeasance or culpable neglect of the defendants as trustees thereof, within some period of time not barred by the statute of limitations ; that defense having also been interposed.

If the fund were now actually in existence, and the construction of the will of Steinwyck claimed by the relator could be upheld, there would be a manifest justice in directing the account demanded. There is, however, an entire failure on the part of the relator to establish a right of action in any of these respects.

The terms of the devise are such, also, as to exclude any congregation or minister from participating in the benefit of this devise, except that particular one which is described in, and existed at the time of the devise. When that congregation was incorporated in 1696, it must be assumed at this late day that the " elders or overseers," transmitted the Steinwyck property to the new corporation in a lawful manner, so that the corporation became vested with the title, and charged with the trust.

The colonial act of 1753, confirming the charter, and authorizing the sale of the Steinwyck land, contemplates and recognizes the defendant's corporation as the then actual owner.

The evidence adduced on the part of the relator, as well as his own allegations, establish that he is a minister of another congregation, having a separate and distinct corporate existence from that of the defendants.

The defendants' corporation must now be considered as having legally succeeded to the congregation whose " elders and overseers" were entitled to and held the Steinwyck devise, and that the corporation, from the time of the charter in

1696, were lawfully empowered to administer the income of the said land at Fordham for the "support and maintenance of their minister."

The colonial act of 1753, in no manner extends the application or benefit of this fund to congregations or ministers who were not organized or embraced within the corporation thereby confirmed.

Both trust funds by the colonial act received an enlarged character and application, according to the terms of which the corporation then confirmed have since administered them.

It is insisted by the relator that the devise of Harpendinck was made for the benefit of the whole denomination of the Reformed Protestant Dutch Church in the city of New York, and not for the sole benefit of the congregation incorporated and known as the Ministers, Elders and Deacons of the Reformed Protestant Dutch Church in the city of New York, the defendants in this action.

When the testator made his will, he was an elder in the only church organization of the Reformed Protestant Church denomination in the city of New York. That organization had been incorporated more than twenty-five years previously, under the same title and designation that the testator used when making the devise in question. It is not unreasonable to suppose that his object was to ensure a certain income for the minister or ministers of the church to which he was attached, and of which he was an elder, to relieve the brethren of the church with whom he was associated, and, perhaps, by the generosity of his bequest, to found a memorial of himself, that would be more lasting than monuments of marble or brass. He names the congregation by its corporate title, as the devisee, and in describing the objects of the trust, he designates the ministers of the *said church.* The testator had in view the only church of that denomination then in existence in the city of New York. Had he designed to include the ministers of any other church or con-

gregation of that denomination, more definite and comprehensive terms would have been used.

Would it have been insisted, at the death of the testator, that another congregation of the same denomination could have been incorporated in the city of New York, and have then successfully claimed, on behalf of the minister of such new church, one half or any portion of the income derived from the bequest of Harpendinck ?   The manifest answer would have been that such was not the intention of the testator.

Referring to the answer of the members of the congregation who had obtained an additional minister to preach to them in English at the "new Dutch Church" at the corner of Nassau and Cedar street, in 1767, on the complaint of those who desired preaching in the Dutch language only, which has been produced in evidence, we find that the minister, Mr. Laidlie, who officiated in English, was maintained by voluntary subscriptions, and that it was not considered by either the Dutch or English part of the congregation, that there was any claim, or pretense of right that such minister should be paid his salary or stipend from the funds derived from either of the trusts in question.   Mr. Laidlie was nevertheless a minister of one of the congregations, within the official and religious organization of the corporation of the defendants.   It was then conceded, as the said answer proves, that the bequest was to maintain preaching in the Dutch language.

Had there been, at the time of the bequest, two church organizations of the denomination to which the relator and the defendants belong, no different language would have ,been required to designate the particular object of the testator's bounty, than has here been used.

The intent of the testator is still more clearly apparent when it is remembered that but one church of the Dutch Reformed denomination was then in existence in the city of New York.

The relator is not a minister of the congregation for whose benefit the bequest was made. He is a minister of another incorporated society or congregation.

It is, however, further insisted that the income of the trust funds is now very large, being four times as large as is required for paying the salaries of the ministers of the " collegiate churches" in the city of New York, and that the intent of the testator would be better administered by applying the surplus income to the payment of the salaries of other ministers of the same denomination in the said city, who do not belong to the " collegiate churches," rather than to apply such surplus to the erection of other churches, as has been heretofore done. On reference to the colonial act of 1753, confirming the charter, &c. it will be found that the defendants are expressly authorized to purchase or build more churches, and convenient houses and gardens for their ministers and officers.

If it were ever necessary or proper to create a scheme for the application of the surplus funds arising under these trusts, none would seem more appropriate, or more in conformity with the benevolent designs of the testator, than has already been prepared by the colonial act already referred to. Assuming that this court may in a proper case recognize and carry into effect the *cy pres* principle, (which I am not prepared to affirm,) there is now no pretense for attempting it, since the scheme, authorized and enacted more than a hundred years ago by the highest authority in the land, the colonial act referred to.

The authority to frame a benevolent scheme for the application of the surplus income of the trust fund was fully exhausted by that act.

A trust which has been administered for more than one hundred years without question as to the right, or the manner of its administration, ought not to be disturbed without clear and unequivocal evidence that the true terms of the

Attorney General *v.* Reformed Protestant Dutch Church.

trust have been disregarded, and that the just and legal rights of the party complaining have been infringed.

An examination of the provisions of the charter of 1696, affords conclusive evidence that it was a certain congregation then existing in the city of New York that was thereby incorporated, and neither that charter nor the colonial act of confirmation in 1753 afford any evidence that it was intended to incorporate, or confirm a charter to incorporate, a *denomination* of christians in the city of New York. It was a certain congregation of the Reformed Protestant Dutch Church of the said city that the charter incorporated, and it was that same corporation that was afterwards confirmed by colonial act; the objects to which the corporation might lawfully apply the income of their property were also by that act enlarged; nothing, however, was enacted diverting the application of its funds to the support or maintenance of the ministers of other corporations, or other congregations not within the organization of the defendants' corporation.

There is no reason to doubt that the trusts under the wills of Steinwyck, (if that fund be now existing,) and of Harpendinck, have been managed in conformity with the directions of those testators, and of the charter of 1696, and the colonial act of 1753.

There is no principle upon which the court can now interfere to disturb the present application of the two funds in question.

The judgment of the special term must be affirmed with costs.

[New York General Term, February 4, 1861. *Sutherland, Leonard* and *Allen,* Justices.]