63 B.R. 56 (1986)
Matter of Eugene Lawrence MATTHIESON and Marlys Jean Matthieson, Robert J. Jakes, Sr., Ronald A. Weber and Ann Weber, Frederick N. Plaetz, Jerome Henry Tasto and Colleen Marie Tasto, and Barry L. Pietz and Paulette A. Pietz, Debtors.
Timothy D. MORATZKA, Trustee, Appellant,
v.
UNITED STATES of America, AGRICULTURAL STABILIZATION AND CONSERVATION SERVICE, Appellee.
Civ. No. 3-85-1711.
United States District Court, D. Minnesota, Third Division.
July 7, 1986.
*57 Phillip L. Kunkel, Moratzka, Dillon, Kunkel & Storkamp, P.A., Hastings, Minn., for appellant.
James E. Lackner, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

MEMORANDUM AND ORDER
MAGNUSON, District Judge.
This matter comes before the court on an appeal by the Trustee[1] from an Order of the bankruptcy court dated August 29, 1985. The present appeal consists of six consolidated Chapter 7 bankruptcy cases involving similar facts and a common question of law. In its Order of August 29, 1985, the bankruptcy court granted the motion of appellee, Agricultural Stabilization and Conservation Service (ASCS), for relief from the automatic stay in bankruptcy to offset the mutual obligations running between *58 the various debtors and ASCS. Specifically, the bankruptcy court determined that the deficiency payment owed each debtor by ASCS was a pre-petition obligation which could be offset under 11 U.S.C. § 553. The Trustee appeals the bankruptcy court's decision, contending that any obligation by ASCS arose post-petition and thus cannot be subject to offset.
The six consolidated cases involve similar relevant facts which are undisputed for purposes of this appeal. The debtors in each case are Minnesota farmers who enrolled in the Federal Crop Deficiency Program for the 1984 growing season. The principal terms of the program, by contract and governmental regulation, required that the debtors refrain from planting crops on a specified portion of their tillable acres and further required debtors to maintain soil conservation practices on the unused acreage. Additional requirements included the filing of certain reports showing compliance with the program's terms and an evaluation of compliance by a local ASCS committee. In exchange, ASCS agreed to pay the debtors a deficiency payment if the final deficiency calculation would be greater than zero. Such deficiency payment was to be based upon a predetermined formula and was dependent upon the end-of-the-year market prices. Consequently, the deficiency payments were due on or about April 1, 1985. Under the formula, it was possible that any particular deficiency payment might have been zero. Subsequent to enrollment in the program, but prior to April 1, 1985, the debtors in each of the consolidated cases filed a petition for relief under Chapter 7 of the Bankruptcy Code.
Prior to the filing of his Chapter 7 petition, each debtor had an outstanding debt owing to the government. These pre-petition debts arose out of secured government loans and unearned deficiency payments from previous years. Absent a bankruptcy filing, the ASCS would be required to offset payments due participants under the deficiency program against debts owed by the participant to any United States government agency or department. See 7 C.F.R. §§ 713.1-713.116. On the basis of such authority, ASCS moved the bankruptcy court for relief from the automatic stay to offset the alleged mutual pre-petition obligations of the parties pursuant to 11 U.S.C. § 553.
The sole issue raised by the Trustee on appeal is whether the deficiency payments owed by ASCS to the enrolled debtors were pre-petition obligations and subject to offset under 11 U.S.C. § 553. The Trustee contends that the obligations owed by ASCS were not pre-petition obligations, but rather obligations arising only after a final determination was made that a deficiency exists. The Trustee specifically asserts that the enrollment contracts between the debtors and ASCS were subject to various conditions precedent, including the final condition that a deficiency in fact exists. Because such conditions could not have been met at the time of filing the bankruptcy petition, the Trustee argues that the ASCS obligations arise post-petition and therefore cannot be used to offset the debtors' obligations. ASCS, on the other hand, endorses the bankruptcy court's determination that their obligations arose at the time of contracting with the participants of the deficiency payment program.
The creditor's right of setoff in bankruptcy is explicitly set forth in § 553(a), which provides in pertinent part:
Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .
11 U.S.C. § 553(a). In order to qualify for a setoff under § 553, the debts must be mutual and they must be pre-petition. In re Braniff Airways, Inc., 42 B.R. 443, 447 (Bankr.N.D.Tex.1984). A creditor may not offset its pre-petition claims against a debt owed to the debtor which came into existence after the filing of the bankruptcy. *59 Cooper-Jarrett, Inc. v. Central Transport, Inc., 726 F.2d 93, 96 (3rd Cir.1984). As previously noted, the issue in this appeal is whether the obligations of ASCS arose prepetition or post-petition.
To support his position that ASCS's obligations became effective only after the final determination of a deficiency, the Trustee relies extensively on the decision in Hill v. Farmers Home Administration (In re Hill), 19 B.R. 375 (Bankr.N.D.Tex.1982). In Hill, the court addressed this same issue in a rather summary fashion, concluding that the obligation of ASCS under a similar program arose only after a determination that a deficiency existed:
[T]he prerequisites for determination of entitlement to money occurs at or near harvest time. It is only after the market price of the crop is determined that one can conclude that a deficiency between that price and the target price occurs. Also, it is late in the season before a conclusion can be reached as to whether there is a "disaster" which provides for disaster payments by ASCS. Therefore, I conclude that those monies, if any, to be paid by ASCS to, or for the benefit, of Hill are post-petition monies.
In re Hill, 19 B.R. at 380. On the basis of this conclusion, the court held that the debt of ASCS owing to the debtor could not be subject to offset under § 553. Id.
After a review of analogous case law, however, the court rejects the Trustee's argument on this question and the conclusion of the court in Hill. The creditor's "right of setoff may be asserted in a bankruptcy case even though at the time the petition is filed [the debt] is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated." Traders Bank of Kansas City v. Stonitsch (Matter of Isis Foods, Inc.), 24 B.R. 75, 76 (Bankr.W.D.Mo.1982); Whitman v. Seedtec International, Inc. (In re Whitman), 38 B. 395, 397 (Bankr.D. N.D.1984). Where an obligation exists prior to bankruptcy, it is irrelevant that the exact amount of liability will not be determined until after the bankruptcy petition was filed. Michigan Consolidated Gas Company v. Fred Sanders Company (Matter of Fred Sanders Co.), 33 B. 310, 312 (Bankr.E.D.Mich.1983). See also Wilson v. Internal Revenue Service (In re Wilson), 29 B.R. 54, 56-58 (Bankr.W.D. Ark.1982).
Similarly, the court also rejects the Trustee's related contention that the deficiency program agreement contained several conditions precedent which could not have been met until after the bankruptcy petitions were filed. In this regard, the Trustee asserts that the conditions precedent include the set-aside requirements, the soil conservation requirements, the filing requirements, and the final determination that a deficiency in fact exists.
A condition precedent is any fact or event, subsequent to the making of a valid contract, which must exist or occur before a right to immediate performance can arise under the contract. Carl Bolander & Sons Inc. v. United Stockyards Corp., 298 Minn. 428, 433, 215 N.W.2d 473, 476 (1974); A. Corbin, Corbin on Contracts § 628 (1960). "A condition precedent . . . is to be performed before the agreement of the parties becomes operative. A condition precedent calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend." Larke Company v. Molan, 269 Minn. 490, 498-99, 131 N.W.2d 734, 740 (1964). A condition precedent is to be distinguished from a promise in that it creates no rights or duties in and of itself but is merely a limiting or modifying factor. In re Lee, 35 B.R. 663, 665 (Bankr.N.D.Ohio 1983), citing S. Williston, A Treatise on the Law of Contracts, § 663 (3d ed. 1961).
As the bankruptcy court noted, under the overall scheme of the deficiency program, the various contract requirements are in the nature of contractual duties and promises rather than conditions precedent. Essentially, the participants agreed to the set-aside, conservation, and filing obligations. In return, ASCS agreed *60 to make advance payments in appropriate cases and ultimately a deficiency payment in April 1985 based upon a predetermined formula. A contrary conclusion would effectively disrupt the functioning of the program by granting those enrolled unlimited discretion in deciding whether or not to participate. See In re Lee, 35 B.R. at 666.
In reaching this conclusion, the court finds support in the reasoning and holding of the court in In re Lee, supra. In Lee, the court held that virtually identical requirements of a similar agricultural program, the Payment-In-Kind (PIK) program, were obligations of the contract and not conditions precedent. In re Lee, 35 B.R. at 666. The court in Lee specifically relied upon (1) the fact that the debtors had been paid an advance diversion payment under the PIK program; and (2) the fact that the contract provided for the assessment of liquidated damages against the debtors for failure to satisfy the contractual requirements. Id. This court agrees with the reasoning and result of the court in Lee, as applied to the present case.
Based upon a fair reading of the contracts and regulations at issue, the court is convinced that the requirements of the deficiency program constituted contractual duties on the part of the debtors rather than conditions precedent. Like the PIK program in Lee, the deficiency payment program provided for advance payment to participants (7 C.F.R. § 713.104) and liquidated damages in the event of non-compliance (7 C.F.R. § 713.49). These provisions indicate an intent by the parties to create mutual obligations under the contract. Under this analysis, the obligations of ASCS under the deficiency program contracts arose at the time the contract was created and were thus pre-petition obligations subject to offset under 11 U.S.C. § 553.
In any event, the court notes that, even assuming the requirements were intended as conditions precedent, the obligations of ASCS were binding from the inception of the contracts. As previously set forth, a condition precedent is a condition precedent to performance under the contract, not formation of the contract. When a condition precedent is not satisfied, it relieves a party to the contract of the obligation to perform. It does not negate the existence of the contract or the binding contractual relationship of the parties. The contract remains in existence, but, due to the failure to satisfy a condition precedent, performance cannot be compelled under the contract.
Accordingly, IT IS ORDERED that:
The Order of the Bankruptcy Court dated August 29, 1985 is affirmed.
NOTES
[1] The original appeal was filed by Robert Neill, former trustee of the various bankruptcy cases. The current trustee, Timothy Moratzka, was substituted as a party by an Order dated March 27, 1986.