In re Delton W. YOUNG and Margaret
A. Young, Debtors.

Bankruptcy No. 591–50740–7.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Aug. 21, 1992.

Gerald Huffaker, Huffaker, Green &
Huffaker, Tahoka, Tex., for debtors.

E. Scott Frost, Asst. U.S. Atty., U.S.
Dept. of Justice, Lubbock, Tex., for U.S.

### MEMORANDUM OF OPINION ON GOVERNMENT'S MOTION TO SETOFF

JOHN C. AKARD, Bankruptcy Judge.

On June 3, 1992, the United States of
America acting on behalf of its agency, the
Farmers Home Administration (FmHA),
filed a motion to modify the automatic stay
to authorize a setoff. The court concludes
that the motion should be denied.

#### Facts [1]

Delton W. Young and wife, Margaret A.
Young, (Debtors) farmed prior to filing for
relief under Chapter 7 of the Bankruptcy
Code on November 22, 1991. At the time
of filing, the Debtors owed the FmHA $94,-
174.93. On April 13, 1992, the Debtors
received a discharge.

---

1. The court adopts the stipulation of the parties filed on August 10, 1992. This Memorandum recites only such facts as are necessary to a decision.

In early 1992, the Debtors made claims to the Commodity Credit Corporation (CCC) for disaster benefits relating to their 1990 and 1991 crops. They qualified for benefits in the amount of $31,390.00. The FmHA seeks to set off these benefits against the Debtors' prepetition obligations. The Debtors assert that they did not become entitled to these disaster benefits until after they filed their bankruptcy; consequently, the government should not be entitled to setoff and the Debtors should receive the disaster benefits as postpetition property.

### Issues

■■■ The legal principles are clear. A creditor may set off mutual prepetition debts. § 553(a).[2] Holders of setoffs right are treated like secured creditors under § 506(a). It is well established that the government may set off funds owed by one agency in order to collect debts owed to other agencies. *In re Stephenson*, 84 B.R. 74, 75 (Bankr.N.D.Tex.1988). Setoff is permitted when, at the time the bankruptcy petition is filed, the debt is absolutely owing but is not presently due, or when a definite liability has accrued but is not yet liquidated. *Moratzka v. United States (In re Matthieson)*, 63 B.R. 56, 59 (D.Minn. 1986). *See also, United States v. Thomas (In re Thomas)*, 91 B.R. 731 (N.D.Tex.1988) *judgment amended*, 93 B.R. 475 (N.D.Tex. 1988); *United States v. Parrish (In re Parrish)*, 75 B.R. 14 (N.D.Tex.1987). In *Thomas*, the government was entitled to set off disaster payments to which the debtor was entitled under an act passed October 18, 1986 and thus owing when he filed for bankruptcy on February 17, 1987. However, the debtor was entitled to disaster payments under an act passed May 27, 1987 because he became entitled to the payments after he filed the bankruptcy petition.

The Debtors filed for bankruptcy on November 22, 1991. The government asserts that the Debtors became entitled to the disaster payments under the Food, Agriculture, Conservation & Trade Act of 1990 (FACT Act), Pub.L. 101–624, 104 Stat. 3967 which Congress passed on November 28, 1990. The Debtors assert that their entitlement to these disaster payments arises from the 1991 Emergency Crop Loss Assistance Act (1991 Act), Pub.L. 102–229, Title I, Chapter 3, 105 Stat. 1712 which the President signed on December 12, 1991. The 1991 Act appropriated funds for payment of disaster benefits for losses associated with 1990, 1991, and 1992 crops. Simultaneously with passage of the 1991 Act, the Secretary of Agriculture declared a disaster on crops for the years 1990 and 1991. Notice of this act and worksheets to calculate disaster payments were sent to producers in early 1992. Thereafter the Debtors applied for disaster benefits.

### Discussion

■■■ The FACT Act provided that because of damaging weather or related conditions in 1989 or 1990, the Secretary of Agriculture could authorize disaster payments for farmers in accordance with various standards. The standards varied depending on the crop and on whether there was crop insurance. Section 2267(a)(1) of the FACT Act states that if a disaster occurs and an appropriate application is filed and approved, "the Secretary of Agriculture shall make disaster assistance available under this chapter as soon as practicable after the date upon which appropriations are made available to carry out this chapter." Section 2271 entitled "Authorization of Appropriations" reads as follows:

> Any benefits or assistance ... made available under this chapter shall be provided only to the extent provided for in advance in appropriations Acts. To carry out this chapter there are authorized to be appropriated such sums as may be necessary in each of the fiscal years 1991 and 1992.

**2.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

The record does not reflect whether the disaster payments claimed by the Debtors relate to the 1990 crop, the 1991 crop, or both. The government bases its right of offset on the FACT Act which related only to 1989 or 1990 crops. Therefore, it appears that losses for 1991 were not contemplated pre-petition and the government would have no right of offset with respect to payments for 1991 crops. *Stephenson, supra.*

The *Matthieson* Court said:

The creditor's "right of setoff may be asserted in a bankruptcy case even though at the time the petition is filed [the debt] is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated." *Traders Bank of Kansas City v. Stonitsch (Matter of Isis Foods, Inc.),* 24 B.R. 75, 76 (Bankr.W.D.Mo.1982); *Whitman v. Seedtec International, Inc. (In re Whitman),* 38 B.R. 395, 397 (Bankr.D.N.D.1984). Where an obligation exists prior to bankruptcy, it is irrelevant that the exact amount of liability will not be determined until after the bankruptcy petition was filed.

63 B.R. 56 at 59. Under this rule, there must be a definite and enforceable obligation at the time the bankruptcy petition is filed even though it is not presently due or the amount has not yet been determined. A careful reading of the FACT Act reveals that although there is an expression of Congressional intent to pay disaster payments under appropriate circumstances, no payments could be made until they were "provided for in advance in appropriations Acts." *Id.* § 2271. Congressional intent does not create a "definite liability" nor a debt that is "absolutely owing." *Matthieson, supra.*

The Debtors' rights to disaster payments did not ripen into a claim against the government until the passage of the 1991 Act, which was after the filing of their bankruptcy. *In re Nielson,* 90 B.R. 172, 175 (Bankr.W.D.N.C.1988). Under these circumstances, the Debtors are entitled to the deficiency payments and the government's claim for offset must be denied.

ORDER ACCORDINGLY.[3]

---

3. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014. This Memorandum will be published.