**In re John David GIBSON and Linda Gay Gibson, Debtors.**

**No. 02–50440–RLJ–7.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

Nov. 8, 2002.

Richard D. Ladd, Lubbock, TX, for Debtors.

E. Scott Frost, United States Attorney's Office, Lubbock, TX, for Farm Service Agency.

---

1. Apparently the Debtors made application, as opposed to the Chapter 7 Trustee, on the assumption that the LDP is a postpetition asset and, therefore, is not property of the estate under section 541 of the Code.

2. Section 553 of the Code provides that a bankruptcy filing "does not affect any right of

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT L. JONES, Bankruptcy Judge.

Before the court is the issue of whether the United States of America, on behalf of its agencies the Farm Service Agency (FSA), successor agency to the Farmers Home Administration, and the Commodity Credit Corporation (CCC) (collectively referred to as the "Government") is entitled to offset loan deficiency payments (LDPs) in the approximate amount of $18,000 which were applied for by the Debtors postpetition.[1]

The issue is raised by the Government's motion to modify stay filed July 3, 2002. The Debtors, John David Gibson and Linda Gay Gibson, and the First National Bank of Lamesa (FNB) oppose the motion, contending that the Debtors' right to the LDPs is a postpetition right, thereby eliminating the right of offset under section 553 of the Code.[2]

### Findings of Fact

1. The parties submitted the issue to the court on stipulated facts, which such stipulations are attached hereto and incorporated as findings of fact.

2. If appropriate, the findings of fact shall be considered conclusions of law.

### Conclusions of Law

3. The court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ...." 11 U.S.C. § 553(a) (2002).

This is a core proceeding. *See* 28 U.S.C. § 157(b) (2002).

■ 4. Bankruptcy Code section 553 governs the issue of setoff in bankruptcy: "[e]xcept as otherwise provided ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a) (2002). This provision does not create a right of setoff; rather, section 553 preserves a party's right to setoff if such right exists outside of bankruptcy. *See In re Shortt*, 277 B.R. 683, 688–89 (Bankr. N.D.Tex.2002).

■ 5. Section 553(a) has been construed to be permissive rather than mandatory, and "[a]pplication of section 553(a), when properly invoked before a court, rests in the discretion of that court, which exercises such discretion under the general principles of equity." *Id.* at 688 (internal quotation omitted).

■ 6. As a threshold question, the court must determine whether the Government can offset the LDPs outside of bankruptcy. FNB argues that any right of setoff that arises under 7 C.F.R. § 1412.406 is inapplicable as such provision refers only to "contract payments." The court, however, notes section 1403.7, which provides that "[d]ebts due CCC may be collected by administrative offset from amounts payable by CCC." 7 C.F.R. § 1403.7(b) (2002). Section 1403.7 applies irregardless of whether the source of the governmental payment is the CCC or some other agency, or whether the holder of a claim against the debtor is the CCC or some other agency. *See id.* § 1403.7(j)-(k).

Thus, section 1403.7 provides the applicable non-bankruptcy law by which the Government may offset the LDPs in this case. *See Turner v. Small Bus. Admin.*, 84 F.3d 1294, 1297 (10th Cir.1996); *Doko Farms v. United States*, 956 F.2d 1136, 1143 (Fed. Cir.1992).[3]

■ 7. To establish a valid right of setoff under section 553, the movant must prove: (1) a debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case; (2) a claim of the creditor against the debtor which arose prior to the commencement of the bankruptcy case; and (3) the debt and the claim must be mutual obligations. *See* 11 U.S.C. § 553(a); *IRS v. Luongo (In the Matter of Luongo)*, 259 F.3d 323, 334 (5th Cir.2001). The party requesting setoff bears the burden of establishing its entitlement to setoff, including that the debtor's claim against such party arose prepetition. *See Braniff Airways Inc. v. Exxon Co.*, 814 F.2d 1030, 1035 (5th Cir.1987).

■ 8. The issue here is whether the Government has met the first element, namely, whether the debt the Government owes Debtors arose prepetition. To arise prepetition, such debt must have been "absolutely owing" prepetition. *See id.* at 1036. *See also Sherman v. First City Bank of Dallas (In the Matter of United Sciences of Am., Inc.)*, 893 F.2d 720, 724 (5th Cir.1990). This does not mean that the debt must have been due prepetition. *See In the Matter of Luongo*, 259 F.3d at 334. Nor does it mean that the debtor must have initiated collection of the debt prepetition. *See id.* And it does not matter that such debt was contingent, unliquidated, or unmatured as of the date of filing. *See id.* at 334 n. 11; *United States v. Gerth*, 991 F.2d 1428, 1433 (8th Cir.

**3.** In addition, the Government has a common law right of offset. *See, e.g., McCall Stock*

*Farms Inc. v. United States*, 14 F.3d 1562, 1566 (Fed.Cir.1993).

1993); *In the Matter of United Sciences of Am. Inc.*, 893 F.2d at 724. Rather, what matters is whether the liability accrued prepetition. *See In the Matter of Luongo*, 259 F.3d at 334;[4] *In re Young*, 144 B.R.

45, 47 (Bankr.N.D.Tex.1992) (Akard, J.)("The creditor's right of setoff may be asserted in a bankruptcy case even though at the time the petition is filed the debt is absolutely owing but not presently due, or

**4.** For example, the Fifth Circuit in *Luongo* permitted the IRS to offset a tax refund against its prepetition tax deficiency claim even though the debtor filed her application for the refund postpetition, because the debtor's right to the refund accrued prepetition. *In the Matter of Luongo*, 259 F.3d at 334–35. As of the petition date, all that remained was for the debtor to bring her action for the refund, but bringing such action postpetition did not mean that the IRS's obligation was a postpetition debt, since the IRS's obligation to the debtor accrued prepetition. *See id.* As explained by the court, "[a]s of December 31, 1997 all of the events necessary to establish [debtor's] tax liability for her 1997 tax year had occurred. The date she actually filed her return *is not relevant in determining when* the debt arose.... Thus, her bankruptcy petition having been filed on May 19, 1998, the overpayment (the debt owed the debtor by the creditor) arose prior to the commencement of the case." *Id.* at 334.

Similarly, in *United States v. Gerth*, the Eighth Circuit considered a motion by the Government to modify the stay in order to permit offset of the debt the Government owed a Chapter 12 debtor for conservation reserve program payments. 991 F.2d at 1429–30. The debtor argued that payments under the program were contingent on the Government's yearly appropriation of funds for the program. *See id.* at 1433. The Eighth Circuit held that "dependency on a postpetition event does not prevent a debt from arising prepetition. The character of a claim is not transformed from prepetition to postpetition simply because it is contingent, unliquidated, or unmatured when the debtor's petition is filed.'" *Id.* at 1433–34, *quoting Braniff Airways*, 814 F.2d at 1036. Furthermore, the court noted that a debt can be absolutely owing prepetition even though that debt would never have come into existence but for the postpetition event. *See Gerth*, 991 F.2d at 1434, *citing In re United Sciences of Am. Inc.*, 893 F.2d at 724. Accordingly, the Eighth Circuit permitted the Government to offset the debt at issue event though such debt depended on postpetition events in order

to be collectible, because "all transactions necessary for [the Government's] liability took place upon execution of the contract and entry of [debtor's] land into the program." *Gerth*, 991 F.2d at 1435.

In *In re Telephone Warehouse Inc.*, the Bankruptcy Court for the District of Delaware considered whether a supplier's debt to the debtors was a prepetition or a postpetition obligation. 259 B.R. 64, 69 (Bankr.D.Del. 2001). The debtors purchased cellular telephone goods from suppliers, and then sold such goods and cellular service contracts to the public. *See id.* at 66. As part of the debtors' agreements with the suppliers, the debtors were to receive a commission for each cellular activation. *See id.* Upon filing the petitions, the debtors owed the suppliers prepetition debts for goods purchased. *See id.* at 69. The suppliers sought to offset debts that they owed the debtors in the form of commission payments against the debtors' debts for goods. *See id.* However, the debtors argued that such commission payments were postpetition debts, because, pursuant to their contracts with the suppliers, commission payments were not due until 45 to 60 days after cellular activation so as to avoid paying commissions for customers who deactivated their services shortly after activation. *See id.* Thus, the debtors argued that commissions due it for activations in the two months preceding the filing were postpetition debts because such commissions were due postpetition, and because, until the expiration of the 45 to 60 day period, such commissions were not absolutely owing. *See id.* The court rejected this argument, holding that "the timing of payment does not affect when the obligation arose. The Debtors earned a commission when the phone was activated. That claim was contingent on the phone not being deactivated within the same month and was unliquidated (since the amount of commission could vary depending on the number of activations that month)." *Id.* The court therefore held that all of the events necessary for liability had occurred prepetition, and accordingly permitted the suppliers to offset their debts. *See id.*

where a definite liability has accrued but is as yet unliquidated"). Dependency on a postpetition event, such as the filing of an application, does not prevent the debt from arising prepetition, when all of the events necessary for liability have occurred prepetition. *See id; Gerth,* 991 F.2d at 1435.

9. Further guidance is provided by the Code's definitions. Section 553 permits setoff of a prepetition "debt." 11 U.S.C. § 553(a) (2002). Debt is defined as "liability on a claim." *See id.* § 101(12). Claim is defined as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured ...." *See id.* § 101(5)(A). Thus, if Debtors had a prepetition right to the LDPs, the Government's debt is a prepetition debt.

■ . 10. LDPs are payments earned in times of depressed commodity prices. *See In re Otto Farms Inc.,* 247 B.R. 757, 758 (Bankr.C.D.Ill.2000). They are intended to help make up the difference between current prices and the CCC loan rates. *See id.* In order to be eligible for an LDP, a producer must:

(1) Comply with all of the upland cotton loan eligibility requirements in accordance with this subpart;

(2) Agree to forgo obtaining such loans;

(3) File a request for payment for a quantity of eligible cotton in accordance with § 1427.5(a) on Form CCC–Cotton AA, Form CCC–709, or other form approved by CCC;

(4) Provide warehouse receipts or, as determined by CCC, a list of gin bale numbers for such cotton showing, for each bale, the net weight established at the gin;

(5) Provide classing information for such quantity in accordance with § 1427.9; and

(6) Otherwise comply with all program requirements.

7 C.F.R. § 1427.23(b) (2002). The producer must satisfy several other requirements, relating to timing, quality of cotton, and packaging and storage of cotton. *See id.* § 1427.5(a)-(d). Finally, the producer must own the beneficial interest in the cotton. *See id.* § 1427.5(e). If the producer has satisfied all of the requirements, the producer is entitled to an LDP calculated by multiplying the applicable quantity of crop by the amount by which the loan rate determined for a bale of cotton exceeds the adjusted world price, as determined by the CCC, as of the date that the producer applies for the LDP. *See id.* § 1427.23(c)-(d).

■ 11. Debtors stored their cotton during November and December of 2001, several months before their bankruptcy filing. Debtors' cotton met the quality and packaging requirements set forth by the Government. Debtors owned the beneficial interest in the cotton. The Debtors met all of the LDP requirements prepetition, save for the filing of an application.[5] The record is silent regarding the applicable prices of cotton, and, therefore, whether Debtors would have received any LDPs

---

5. The parties' stipulations include, as an exhibit, a document from the United Gin Company. This document lists the cotton that forms the basis of the LDP. This document further lists the dates on which Debtors stored their cotton, along with the weight of each storage and, presumably, grading classifications. As this document shows that all of Debtors' cotton was stored before the bank-

ruptcy was filed, the Debtors could not have modified timing, quality of cotton, packaging, and storage of cotton after the cotton was already stored, as Debtors had no further access to this cotton. Thus, the court concludes that all LDP program requirements relating to the physical qualities of the cotton were met prepetition.

or the amount of any such LDPs. However, because Debtors met all the LDP program requirements prepetition, Debtors' right to an LDP accrued prepetition: all that remained was Debtors' decision to exercise such right.

12. Applying for the LDPs postpetition does not in and of itself render the Government's liability a postpetition debt; Debtors' right to an LDP accrued prepetition. *See In the Matter of Luongo,* 259 F.3d at 334.

13. Debtors argue that the LDP program is different from most government programs whereby farmers enter into prepetition contracts with the government and, therefore, the government and farmers have mutual prepetition contractual obligations to each other. Specifically, Debtors argue they were under no obligation to place their cotton in the LDP program. They had the option of selling their cotton on the open market. They argue that their entitlement to the LDP was dependent on the average world price of cotton and their decision to place their cotton in the program, which decision was made postpetition (by submitting their application). Their right to the LDP, it is argued, could not have become fixed until the day they actually filed their application because only then would the average world price of cotton be known.

14. That the Government's liability to Debtors depended on Debtors' decision to place their cotton in the LDP program and on the adjusted world price of cotton makes the Government's liability to Debtors contingent and unliquidated. The critical factor is whether the Debtors' *right* to an LDP accrued prepetition. *See* 11 U.S.C. § 553(a) (2002); § 101(12); § 101(5)(A); *Sherman v. First City Bank of Dallas (In the Matter of United Sciences of Am., Inc.),* 893 F.2d 720, 724 (5th Cir.1990)(holding that debt from debtor to

bank in the form of chargebacks to the debtor's account for credit card transaction rescissions was prepetition debt, even though customers rescinded transactions postpetition and the bank therefore charged-back postpetition, because a customer's right to rescind and thereby the bank's right to chargeback accrued at the time the customer made a purchase, even though such customer exercised his right to rescind postpetition).

15. Characterizing the LDP as a non-contractual obligation does not resolve the question in the Debtors' (and FNB's) favor. Many cases that address farm program payments conclude that, because prepetition contracts create prepetition rights and obligations, dependency on a postpetition event does not negate such prepetition obligations. *See, e.g., Farmers Home Admin. v. Buckner (In re Tuttle),* 218 B.R. 137, 147–48 (10th Cir. BAP 1998). While Debtors were not contractually obligated to place their cotton in the LDP program, to hold that this factor distinguishes the present case from the applicable case law misses the point of the LDP program: the LDP is a governmental entitlement. By enacting the LDP program, the Government became liable to eligible producers. Such liability is contingent on eligible producers opting to enter the LDP program. The Government was under a prepetition obligation to Debtors under the LDP program, contingent on Debtors' exercise of their entitlement to the LDP. The Code defines claim as a "right to payment." 11 U.S.C. § 101(5)(A) (2002). The Code does not mandate that Debtors' right to payment arise from a contract.

16. The Debtors' decision, made postpetition, to apply for the LDPs, does not alter the Government's prepetition obligation. At most, it renders the Government's debt contingent on Debtors' decision to exercise their right. It does not

matter that the Government's debt was contingent on a postpetition occurrence, so long as the obligation arose prepetition. *See In the Matter of Luongo,* 259 F.3d at 334; *In re Young,* 144 B.R. 45, 47 (Bankr. N.D.Tex.1992).

17. The relationship of the loan rate for placing cotton in the loan to the adjusted world price for cotton, and the application of such factors to the LDP, affects the *amount* of the LDPs and, at most, renders the LDPs, as a prepetition obligation, contingent and unliquidated. The amount of the LDP cannot be calculated until actually applied for; however, "[w]here an obligation exists prior to bankruptcy, it is irrelevant that the exact amount of liability will not be determined until after the bankruptcy petition was filed." *Moratzka v. United States (In the Matter of Matthieson),* 63 B.R. 56, 59 (D.Minn.1986). *Accord Buske v. Mc-Donald (In re Buske),* 75 B.R. 213, 216 (Bankr.N.D.Tex.1987)(Akard, J.).

18. In *Matthieson,* a case which has been followed in this court and in most other courts, the district court permitted the government to offset deficiency payments. *In the Matter of Matthieson,* 63 B.R. at 59–60. The government, by contract with the debtors, agreed to pay the debtors a deficiency payment if the final deficiency calculation would be greater than zero. *See id.* at 58. "Such deficiency payment was to be based upon a predetermined formula and was dependent upon the end-of-the-year market prices. Consequently, the deficiency payments were due on or about April 1, 1985. Under the formula, it was possible that any particular deficiency payment might have been zero. Subsequent to enrollment in the program, but prior to April 1, 1985, the debtors ... filed a petition for relief under Chapter 7." *Id.* The court found that, even though the ultimate deficiency payment may have been zero, the government had obligated itself prepetition to pay a deficiency payment if certain criteria were met. *See id.* at 59–60. That such criteria could not have been determined prepetition did not alter the government's obligation, and, consequently, its right to setoff. *See id.*

19. Similarly, in this case, Debtors could have placed their cotton in the LDP program prepetition and would have then had a right to LDP payments. That the LDPs might have been zero does not alter their prepetition right to LDPs, nor does it alter the Government's obligation under the LDP program. *See id.*

20. The Debtors and FNB stipulate that FNB's prepetition security interest covers the LDP payments. They must therefore concede that under section 552 of the Code the LDPs constitute proceeds of the Debtors' prepetition cotton crop. *See* 11 U.S.C. § 552(a) and (b).[6] It would be anomalous to concede the validity of FNB's lien but deny the Government's right of setoff. It would also be inequitable.

---

**6.** Section 552(a) provides that "except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a). Subsection (b) provides, in pertinent part, that "if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property, then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law ...." *Id.* § 553(b).

21. As the court concludes that the LDPs satisfy the requirement of establishing a prepetition debt owed by the Government to the Debtors, the Government's right of setoff is preserved. 11 U.S.C. § 553(a). The court will therefore grant relief to the Government on its motion.[7]

22. If appropriate, these conclusions of law shall be considered findings of fact.

---

7. The motion requested relief from the stay to allow the Government to offset against the LDPs. There is no equity in the LDPs and, given this is a Chapter 7 proceeding, the LDPs are certainly not necessary to an effective reorganization. *See* 11 U.S.C. § 362(d).