**In re A.J. NIELSON and Doris Nielson, Debtors.**

**Bankruptcy No. A–B–87–00439.**

United States Bankruptcy Court, W.D. North Carolina.

July 15, 1988.

Edward C. Hay, Asheville, N.C., for debtors.

Clifford C. Marshall, Ass't. U.S. Atty. Asheville, N.C., for Farmer's Home Administration.

## ORDER DENYING RELIEF FROM STAY TO EFFECT OFFSET

GEORGE R. HODGES, Bankruptcy Judge.

This matter is before the court on the motion of Farmer's Home Administration ("FmHA") motion for relief from the automatic stay to permit it to effect an offset against disaster relief funds due these farm debtors. The Court has concluded that FmHA's motion must be denied for the reasons that: (1) permitting an offset in the circumstances of this case would work an inequity; and (2) there is no mutuality between the respective obligations. The reasons for this conclusion follow:

### Facts

The Chapter 12 debtors ("Nielsons") are apple farmers in Henderson County, North Carolina. In the fall of 1986, disaster relief was authorized for 1986 Disaster Payment Program crops. At that time apples were not included in the "program" crops. By the Farm Disaster Assistance Act of 1987, apple crops were added to those crops included in the "program" crops entitled to disaster relief for the 1986 crop—up to a maximum limit of $100,000. The Nielsons filed a timely application for over $125,000 in relief. On July 29, 1987, this application was approved (subject to the $100,000 limit). However, the appropriation of funds was not sufficient to pay all approved applications in full. Payments were made for relief for the traditional "program" crops at a rate of more than 90% of approved amounts. But, for apple crops, payment was limited to 43.72% of approved funds. The Nielsons received $43,720 in disaster relief prior to filing their Chapter 12 bankruptcy petition. That petition was filed on September 9, 1987.

In early 1988, additional funds were appropriated so that a total of 89.25% of approved relief would be made available for "non-program" crops such as apples. Consequently the Nielsons became entitled to an additional 45.53% of their approved relief—or $45,530 in disaster relief. Those funds are on deposit with the Agricultural Stabilization and Conservation Service ("ASCS") for the Nielsons' benefit.

The Nielsons are indebted to FmHA in the approximate amount of $1,100,000. That indebtedness is secured by a second lien on their real estate (the apple orchards) and first liens on the farm equipment and machinery.

The Nielsons have proposed a Chapter 12 plan of reorganization that is dependent upon the disaster relief funds for success.* That plan—as yet unconfirmed—proposes to use the disaster relief funds to pay current expenses such as utility bills and insurance on the farm and equipment, to preserve and harvest the 1988 apple crop, for future operation expenses and to pay certain administrative expenses.

FmHA has moved for relief from the automatic stay in order to effect an offset against the disaster relief funds held for the Nielsons by the ASCS another agency of the United States.

### Equity

■ The right of offset recognized by 11 U.S.C. § 553(a) is a long-standing, but nar-

---

* The plan has been submitted to creditors and a confirmation hearing is scheduled for next week. No opinion is stated here as to whether that plan should or should not be confirmed.

The only point here is that it is clear that a plan of reorganization could not be effected without the disaster relief funds.

row exception to the basic tenets of the Bankruptcy Code, which generally prohibit preferential treatment of creditors of similar status. While setoffs are generally favored, they are not automatically permitted. The right of setoff is permissive, not mandatory. Allowance of a setoff is within the discretion of the court—which must exercise that discretion consistent with general principles of equity. *See Melamed v. Lake County Nat'l. Bank,* 727 F.2d 1399, 1404 (6th Cir.1984); 4 *Collier on Bankruptcy* Para. 553.02 at 553–11 and n. 10a. While the court's discretion is not unbounded, setoff should not be permitted when it would be "inequitable or against public policy to do so." *FDIC v. Bank or America,* 701 F.2d 831, 836–37 (9th Cir. 1983).

The court has concluded that it would be inequitable and contrary to the intentions of Congress to allow an offset in the circumstances of this case for a number of reasons:

First, equity should not be used to subvert the intentions of Congress. The court has not found any mention of the possibility of offsets by federal agencies in the legislative history of the Farm Disaster Assistance Act of 1987. That possibility was apparently not considered. But, Congress' intention in this legislation is clearly demonstrated by its actions. In two separate actions it attempted to provide financial aid to apple farmers who had previously not been entitled to relief. First, in 1987 it expanded the disaster relief program to include apple crops. Then, in 1988, it made a separate, additional appropriation specifically to increase disaster relief payments for apple crops to about the same percentage of approved funding as the traditional "program" crops had received. The only intention evidenced by those acts was the intention to assist farmers like the Nielsons who Congress knew were in poor financial condition as a result of a poor 1986 crop. The court cannot imagine that Congress ever intended its extension of disaster relief payments to assist FmHA's debt collections. However, if FmHA were permitted to offset here, that would be exactly what would occur—clearly subverting Congress' effort to assist these farmers.

Second, the situation here is analogous to cases where principles of equitable estoppel have prohibited offset because of a "special purpose" for the fund. For example, in *In re Applied Logic Corp.,* 576 F.2d 952 (2d Cir.1978), the court noted that "it was settled law that a bank cannot exercise a setoff against a deposit which is known by it to be dedicated to a special purpose...." 576 F.2d at 958 (citing cases). The court went on to state:

> However, the principle seems to go beyond such cases and to include others where courts say that the bank is "equitably estopped from a setoff." What this really means is that by accepting the deposit for a special purpose the bank has agreed, at least implicitly, that the deposit should not be subject to its claims against the depositor and that it will be held to such agreement.

576 F.2d at 958. This principle has also been recognized in the Fourth Circuit (albeit long ago). *See Union Trust Co. v. Peck,* 16 F.2d 986, 987–88 (4th Cir., 1927), *cert. denied,* 273 U.S. 767, 47 S.Ct. 571, 71 L.Ed. 882 (1927).

The circumstances here appear wholly analogous to the "special purpose" deposit. Although a bank is not present here, the fact is that Congress appropriated funds and caused those funds to be deposited with an agency of the United States (ASCS) *for the specific purpose* of providing disaster relief for the benefit of farmers—including the Nielsons. Just as with the special purpose bank deposit, there is here the implicit agreement that the disaster relief funds should not be subject to the claims of another agency of the United States.** Consequently, FmHA should be equitably estopped from offsetting its debt against the ASCS relief funds due the Nielsons.

---

** ASCS and FmHA are both agencies of the United States (and of the Department of Agriculture) and are treated as one entity for purposes of "mutuality." *See Cherry Cotton Mills v. United States,* 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946). Likewise, they should be treated as one entity for the purpose of equitable estoppel.

Third, policies supporting bankruptcy reorganizations militate against permitting an offset where the immediate effect would be to destroy any possibility of reorganization. In *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed. 2d 515 (1983), the Court recognized the important public policy that was fostered by reorganization (there pursuant to Chapter 11) in contrast to liquidation. 462 U.S. at 203, 103 S.Ct. at 2312–13. The enactment of Chapter 12, specifically designed for family farm reorganization, is further evidence of that policy.

While the court does not believe that those policy concerns alone necessarily prohibit offset in all cases, it remains an important factor in this case. Here, it appears that the disaster relief funds are essential to a reorganization because they represent the only funds available to preserve and harvest the Nielsons' 1988 apple crop. The reorganization may fail even with these funds (the plan may even fail to be confirmed). But, it certainly will fail without the funds. On the other hand, it appears that virtually all of the relief funds will be put into the farm and equipment and would ultimately inure to the benefit of FmHA to some degree if a reorganization fails. (The exception is the payment of administrative expenses in this proceeding). In such a situation, FmHA should not be permitted to deny the Nielsons a meaningful opportunity to reorganize by offsetting its debt against disaster their relief funds.

For all of the foregoing reasons, the court concludes that principles of equity dictate that FmHA's motion for relief to offset against the ASCS funds held for the Nielsons' benefit should be denied.

### *Mutuality*

There is an additional, alternative reason why FmHA's motion must be denied here—there is no mutuality of obligation on the facts of this case.

Section 553(a) permits a creditor to offset "a mutual debt owing by such creditor to the debtor *that arose before commencement of the case* ... against a claim of such creditor against the debtor that arose before commencement of the case...." (Emphasis added). So, the claim and debt must both be created *pre*-petition. *Collier* notes:

> To be eligible for setoff, both the mutual claim of the creditor and the debt of the debtor must have arisen prior to commencement of the case. Claims arising after the commencement of the case lack the requisite mutuality for setoff because the postpetition trustee or debtor in possession is a different entity from the prepetition debtor.

4 *Collier on Bankruptcy* Para. 553.08 at 553–37 and n. 3.

The claim of FmHA clearly arose pre-petition. But, here the "debt owing by such creditor" (ASCS) is the *second* appropriation by Congress—which did *not* "ar[ise] before commencement of the case." 11 U.S.C. § 553(a). The Farm Disaster Assistance Act of 1987 which entitled the Nielsons to be considered for relief funds was enacted pre-petition and their application was approved and a payment made prior to this bankruptcy. But, that is not the "debt owing" that is at issue here.

At the time the first disaster payment was made in 1987, the United States had fully satisfied its only pre-petition obligation. Congress had no obligation to fully fund the disaster relief program. That is demonstrated by the fact that it has, in fact, not fully funded it to this day. The second appropriation was a separate act that was not required by anything that occurred prior to the filing of the Nielsons' Chapter 12 petition. Until that second appropriation was made—post-petition—there was no "debt owing" to the Nielsons. The court concludes that the ASCS funds held for the benefit of the Nielsons represent a post-petition obligation that is not subject to offset by FmHA. Consequently, FmHA's motion for relief to offset against those funds must be denied here on this alternative ground alone.

It is therefore ORDERED that FmHA's "Motion to Lift Stay and for Offset" is denied.